H. M. STACEY, Respondent, v. LOUIS ROBINSON, Appellant.

St. Louis Court of Appeals, June 20, 1914.

1. **FRAUD AND DECEIT: Liability for Misrepresentations.** Where a person makes a misrepresentation concerning a matter which is not peculiarly within his knowledge and as to which he might be presumed to know the facts, and he does not know that his representation is false, he can be held liable therefor only on the theory that he made a positive representation, as of his own knowledge, with a reckless disregard of its truth or falsity.

2. ————: ————: **Statement of Opinion.** In an action for false and fraudulent representations alleged to have been made concerning a third party's title to real estate, resulting in plaintiff making a loan to defendant's principal, secured by a pledge of notes and a deed of trust on such real estate, an admission by plaintiff that defendant qualified his statement that the title was good, by saying that his principal would not have taken the deed of trust otherwise, precluded a recovery by plaintiff, since the qualification indicated that defendant's representation was not based upon any professed knowledge on his part as to the state of the title, but was a mere opinion.

3. ——: ——: ——. Fraud cannot be based upon mere statements of opinion, as distinguished from a representation of fact.

4. ——: ——: **Necessity of Showing Injury.** In an action for false and fraudulent representations alleged to have been made concerning a third party's title to real estate, resulting in plaintiff making a loan to defendant's principal, secured by a pledge of notes and a deed of trust on such real estate, where it was not shown that either the borrower or the maker of the notes which were pledged was insolvent, and no effort had been made by plaintiff to enforce the obligation against them, plaintiff was not entitled to recover, since fraud must concur with damages, to be actionable.

5. **EVIDENCE: Insolvency: Sufficiency of Evidence.** In an action in which it was essential for plaintiff to show the insolvency of another, testimony by plaintiff, when asked whether he could make the debt out of such person, that he didn't think he could, was insufficient to prove insolvency.

6. **FRAUD AND DECEIT: Necessity of Showing Injury.** Fraud must concur with damages to be actionable.

7. ——: ——: **Burden of Proof.** In an action for false and fraudulent representations, the burden is upon plaintiff to prove that he suffered actual damage consequent upon the false representations.

Appeal from Stoddard Circuit Court.—*Hon. W. S. C. Walker,* Judge.

REVERSED.

*Mozley & Woody, Farris & Williamson* and *Orchard & Cunningham* for appellant.

(1) One is not liable for mere expression or statement of his opinion as to the value of property, though defendant was deceived thereby. Mere loose talk and brag about values of any property will not make the utterer liable. Such language is taken for what it is worth and is never believed without examination. Franklin v. Halle, 7 Mo. App. 241; Anderson v. McPike, 86 Mo. 293. (2) The courts hold that even its fraudulent representations are made respecting a

given subject, and the party to whom the representations are made does not rely upon such representations, but seeks other quarters to verify the statements made, he cannot afterwards say that a deceit has been practiced upon him by the party originally making the misrepresentations. Anderson v. McPike, 86 Mo. 293. (3) To entitle plaintiff to recover in an action for deceit or fraud regarding the value and quality of land, the representations made by defendant must appear to have been so extreme as to exclude a possibility of an honest mistake or difference of opinion, and must have been relied on by plaintiff and have been the proximate cause of the transaction which resulted in damage to him. Brownlee v. Hewitt, 1 Mo. App. 360; Jolliffe v. Collins, 21 Mo. 338; Parker v. Marquis, 64 Mo. 38. (4) Fraud, deceit, representations, though false, if innocently made, without any intention to defraud and under the belief that they were true, furnish no support to the allegation of fraud and deceit. Green v. Worman, 83 Mo. App. 568; Koontz v. Kaufman, 31 Mo. App. 397.

*H. S. Green* and *Wammack & Welborn* for respondent.

ALLEN, J.—This is an action to recover for alleged false and fraudulent representations made to plaintiff by the defendant. Plaintiff recovered and the defendant prosecutes the appeal.

The petition alleges that, in 1905, plaintiff loaned one R. L. Smith the sum of six hundred dollars, to bear interest at the rate of eight per cent per annum; that such loan was made through the defendant, Robinson, as Smith's agent; that at the time thereof, defendant represented to plaintiff that Smith was the owner of two certain notes for the sum of five hundred dollars each, executed by one Pickard, and secured by a deed of trust upon certain real estate in Butler

county, Missouri, and that defendant knew that Pickard's title to said real estate was good; that defendant offered to give plaintiff his duebill for the amount of said loan, provided plaintiff would re-deliver such duebill to him when he had procured and delivered to plaintiff the said notes of Pickard, indorsed by Smith, together with the deed of trust securing the same. And it is alleged that plaintiff paid said sum of six hundred dollars to defendant, receiving the latter's duebill therefor, and that thereafter defendant delivered to plaintiff the notes and deed of trust above mentioned, whereupon plaintiff surrendered to defendant the latter's duebill. And it is alleged that said representations of defendant as to Pickard's title to the land were false, in that Pickard had no title thereto, whereby said deed of trust proved to be worthless, and it is averred that defendant knew that said representations were false and that defendant "had no reason to believe that said Pickard had any title to said real estate;" that such representations were made by defendant "for the purpose and with the intent of inducing plaintiff to loan said Smith said sum of six hundred dollars on said notes and deed of trust;" and that plaintiff made such loan "on the faith, and in the belief" that the representations of defendant were true, and in ignorance of their falsity. And it is averred that both Pickard and Smith are insolvent.

The answer was a general denial, coupled with further averments which need not be noticed.

At the time of the transaction here in question, plaintiff resided in Stoddard county, a few miles from Bloomfield; and the defendant lived some five miles from Asherville, in said county, at which place Smith was conducting a store. Plaintiff's testimony is to the effect that, while at defendant's home in August, 1905, defendant told him that "Bob Smith" wanted to borrow some money from him. Plaintiff testified

that he told defendant that he could let "Bob" have the money, if the latter would make him "safe" therefor, and that defendant told him that Smith had a mortgage of one thousand dollars; that defendant said that Smith had the notes of one Pickard, aggregating one thousand dollars, secured by a deed of trust upon certain land, and that he (defendant) knew that the title to the land was good, and "said that he knew Bob wouldn't have taken it unless it was good." Plaintiff testified that he asked defendant if Pickard had an abstract of the title to the land, and that defendant told him that he was not certain as to this, but thought Pickard had.

Plaintiff further testified that, a few days later, he had a second conversation with defendant, on the river bank, near the latter's house, having brought the money to make the loan. It appears that the notes executed by Pickard and secured by the deed of trust, and which Smith held, were either in St. Louis or Cape Girardeau, and that it would take some days to procure them. Plaintiff testified that the defendant suggested that the money be placed in his hands until the notes and deed of trust were procured, saying that Smith "was as tricky as hell;" that defendant said that he would "stand good" for the money, and that he would get the notes and deed of trust and bring the same to plaintiff; that plaintiff assented thereto, provided defendant would give him his due bill for the money in the meantime, which was done; and that some eight or ten days thereafter defendant came to plaintiff's house with the notes and deed of trust, and delivered the same to plaintiff and took up his duebill.

Defendant's testimony is to the effect that Smith had for some time been endeavoring to get plaintiff to lend him this money; and that, at the time of the first conversation with plaintiff relative to the loan, plaintiff asked defendant what he thought about

Smith, and that defendant said that "Bob was a merchant selling goods up there and that he was a pretty tough customer." And defendant testified that at the time of his next meeting with plaintiff the latter delivered the money to him, taking therefor, not defendant's duebill, but some written agreement which Smith had prepared and signed, and which plaintiff was to retain until the notes and deed of trust were procured and delivered to him; that the understanding was that he (defendant) was merely to hold the money, as an accommodation to both parties, until the security was obtained; and that this he did, retaining the money himself until the notes and deed of trust were given to him by Smith, whereupon he delivered the latter to the plaintiff and paid the money to Smith.

Smith did not testify in the case. Pickard, the maker of the two notes secured by the deed of trust in question, testified on behalf of defendant. He stated that he had executed the notes and deed of trust in question, believing that he had a good and perfect title to the land described in the deed of trust; that plaintiff had a conversation with him before making the loan, and asked him if the title to the land was good, and that he told plaintiff that he "believed the title was good." Pickard further testified that he was worth the amount of the notes in question; that they had been given to Smith in payment for some teams, and other property and cash, and that he regarded the notes as being valid obligations on his part. He stated, at the time of the trial, that he could then make part payment upon the notes, and that he had sufficient property out of which the amount thereof could be made, and that he had no family.

In rebuttal, plaintiff denied having had any conversation with Pickard prior to making the loan.

Plaintiff's cause of action proceeds upon the theory that he loaned his money to Smith, and that

he was damaged because of the alleged false and fraudulent representations made by defendant respecting the title to the land. From the evidence adduced, it appears that Pickard's title thereto failed, and that the deed of trust was thereby rendered worthless as security for the notes. Plaintiff's testimony is confusing and contradictory as to whether the loan was really made to Smith, or to the defendant himself. But the allegations of plaintiff's petition are to the effect that he loaned the money, not to defendant, but to Smith; and his cause of action proceeds, not upon any obligation of defendant to repay moneys loaned to him, but as for fraud and deceit on defendant's part in the transaction.

Respecting the cause of action thus alleged and attempted to be established, a careful examination of the record has forced us to the conclusion that plaintiff failed to make out a case. In the first place, the evidence does not appear to establish the charge of fraud laid in the petition. It is true that plaintiff's testimony is to the effect that defendant represented that the deed of trust was "good," and that the title of Pickard, the maker thereof, was valid. But as to such alleged representations, plaintiff testified that defendant said that "he knew it was good, and he said that he knew Bob wouldn't have taken it unless it was good." This accords very closely with defendant's testimony, to the effect that he made no actual representation as to the title, but merely stated that he believed the title to be good, "for the reason that he didn't think that men like Smith and Pickard would deal in land with a bad title;" that he "thought they had more sense than that."

There is no evidence that defendant had or claimed to have had any personal knowledge whatsoever respecting the title to the land. It was not a matter peculiarly within his knowledge, and as to which he might be presumed to know the facts; and if

he made any false representations as to the title, there is not one word of evidence indicating that he knew such representations to be false; and he could be held liable therefor only as for a positive representation made, as of his own knowledge, with a reckless disregard of its truth or falsity.

But from plaintiff's own testimony it appears that the alleged representations were not made as of defendant's own knowledge, with the intention that they should be so relied upon. As to this, plaintiff's entire testimony touching the matter must be taken into consideration, and not mere isolated portions thereof in which plaintiff says that defendant represented that the title was good. Plaintiff admits that defendant qualified this by saying that he knew that Smith would not have taken the deed of trust unless the title was good, indicating clearly that defendant's alleged statements regarding the title were based, not upon any professed knowledge of his own as to the state of the title, but upon his belief that Smith was not a man likely to be inveigled into accepting a bad title; showing that such statements were essentially expressions of opinion, rather than statements of fact intended to be relied upon as such.

The general rule is stated to be, that if a vendor of property, in order to induce a sale, makes positive assertions as to any material fact which is peculiarly within his own knowledge and of which the purchaser is ignorant, such as the title, area, boundaries, etc., such statements may be relied upon by the purchaser without further investigation; and if they prove to be false and fraudulent, and cause damage to the purchaser, he may hold the vendor liable therefor. [See 20 Cyc., pp. 55, 56.]

"According to the weight of authority, however, the rule of *caveat emptor* applies, and under ordinary circumstances the purchaser is required to use reasonable prudence to avoid deception. Thus, where the

subject-matter of the representation is a fact not pe-
culiarly within the vendor's knowledge, but is one as
to which the purchaser has equal and available means
and opportunity for information, and there was no
confidential relation existing between the two, and
no fraud or artifice is used to prevent inquiry or in-
vestigation, it is a general rule that the purchaser
must make use of his means of knowledge, and that,
failing to do so, he cannot recover on the ground that
he was misled by the vendor.'' [See 20 Cyc.,
pp. 49, 50.]

It is said that a misrepresentation as to the title
to land, knowingly made, and intended to be relied
upon by one contemplating a purchase, and actually
relied upon by such purchaser from lack of opportu-
nity to examine for himself or from his confidence in
the seller, is actionable. [See Kerwin v. Friedman,
127 Mo. App. 522, 105 S. W. 1102, and cases cited.]

And it is held that a direct and positive repre-
sentation by one man to another that he has title to
certain lands is not necessarily a mere opinion upon
a question of law; but that if intended and understood
as a representation of a fact, and relied upon to the
damage of the other party, it may become an action-
able fraud. [See Hurlbert v. T. D. Kellogg L. & M.
Co., 115 Wis. 225; Burns v. Dockray, 156 Mass. 135;
Reynolds v. Franklin, 39 Minn. 24; Atwood v. Chap-
man, 68 Me. 38.]

In general, cases of such character proceed upon
the theory that the party making the representations,
as e. g., a vendor, is in a position to know, and may
be presumed to know, the facts (see Judd v. Walker,
215 Mo. 324, 114 S. W. 979); that the title is a matter
peculiarly within his knowledge; and that where the
other party, from lack of opportunity to examine into
the title, or because of his confidence in the party mak-
ing the representations, relies upon the statements
thus made to him, to his injury, he may recover there-

for as for fraud and deceit. But whether, under the circumstances of this case, the defendant can be brought within the application of the rule, above stated, is a matter which we need not decide. The doctrine referred to is ordinarily applied to a vendor or his agent; and we need not stop to consider whether there can be said to be any evidence that defendant was Smith's agent, nor, on the other hand, whether the rule may be extended to include one who is an entire stranger to the title, but who makes false representations as to the same. This is for the reason that we regard the statements of defendant, as shown by plaintiff's own testimony, to be expressions of opinion; and that plaintiff must have so understood the same at the time. And all the authorities agree that fraud cannot be based upon mere statements of opinion, as distinguished from representations of fact. The fact that defendant gave as a reason for his alleged statements that Smith would not take an invalid title, shows upon its face that such statements were in the nature of opinions of the speaker, based merely upon his personal knowledge of the man Smith. That plaintiff so understood, appears from the fact that he at once inquired concerning an abstract; though it seems that he failed to follow this up and avail himself of the means of ascertaining the true state of the title.

But it is quite clear that plaintiff cannot prevail for a further reason, and that is because he has not shown that he has been damaged by the alleged false representations of the defendant. According to plaintiff's testimony and his theory of the case, he loaned his money to Smith, secured by the Pickard notes and deed of trust as collateral. While it appears that Pickard's title to the land failed, it does not appear that plaintiff made any effort whatsoever to recover his money, either from Smith or Pickard, nor was either shown to be insolvent.

Plaintiff was asked whether he could make the debt out of Smith, and he replied: "I don't think I could." This was all of the testimony relating to Smith's financial condition, and it fell far short of showing that he was insolvent. Pickard testified positively that he was solvent and worth the amount of the two notes, and not the head of a family and entitled to exemptions as such. From this testimony, which is uncontradicted, it appears that plaintiff could recover from Pickard the amount of his loan with interest.

Plaintiff cannot recover of the defendant as for fraud and deceit, until he shows that he has been damaged by the alleged fraudulent representations made. It is well settled that "fraud must concur with damages to be actionable." [See Johnson v. United Railways Co., 247 Mo. 358, 152 S. W. 369; McLennan v. Investment Exch. Co., 170 Mo. 393, 150 S. W. 730; Bank v. Dowler, 167 Mo. App. 378, 379; Thompson v. Newell, 118 Mo. App. 405, 94 S. W. 557.]

And one cannot be said to have been damaged where, as here, he has made no effort to recover either from the primary debtor, to whom he says the money was loaned, nor from the maker of the notes which he took as collateral, and has not shown that such parties are insolvent. [See Hamlin v. Abell, 120 Mo. 207, 25 S. W. 516.] Though the deed of trust proved to be worthless, it does not follow that the notes themselves are so, for they remain as personal obligations of the maker. And where the only evidence touching the matter is to the effect that the maker is solvent and able to respond to a judgment for more than the amount of plaintiff's claim, it cannot be said that plaintiff has necessarily been damaged by reason of the fact that the deed of trust proved invalid. The burden was upon the plaintiff to prove that he suffered actual damage consequent upon the alleged false representations of the defend-

ant; and it is clear that he has not sustained this burden.

The judgment should be reversed, and it is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.