GEORGE PETERSON, Appellee, v. O. J. McMANUS et al., Appellants.

**APPEAL AND ERROR:** Misconduct of Counsel—Discretion of Court—Harmless Error. Any misconduct of attorney in his argument to the jury, in an action to rescind a contract to buy lands, in stating, without any evidence therefor, that plaintiff's assignor was the moving force and principal actor in the case, and that he had induced plaintiff and other assignors to repudiate their contracts and to institute suit, *held* not such misconduct as to require reversal for refusal to grant a new trial therefor.

**APPEAL AND ERROR:** Rescission of Sale—Theory of Case. Upon the sustaining of defendant's motion to strike certain counts of the petition, on the ground that the suit was one to rescind contracts for purchase of lands, and that matters contained in these counts were inconsistent with the purposes of the suit, and upon the dismissal by the plaintiff of said counts without prejudice, without any exception to the ruling, the suit became one to rescind the contracts.

**APPEAL AND ERROR:** Review—No Brief Points. Errors not covered by brief points will not be reviewed.

**EVIDENCE:** Opinion Evidence—Nature of Land and Crops. Testimony that land was good agricultural land, and in a good corn

and fruit country, and that all kinds of grain grew there, 70 to 100 bushels per acre, and that said land had been classed by the Canadian government as being No. 1, and as belonging to the "first class," and that it was covered with a luxuriant growth of grass, was not objectionable for being the mere statement of an opinion.

EVIDENCE:   Opinion   Evidence—Conclusion—Agricultural   Land. If testimony of a witness who had knowledge of what constitutes agricultural land, that he had examined the land and that it was agricultural land, was a conclusion, yet it was within the class of conclusions that are admissible in evidence.

TRIAL:   Reception of Evidence—Volunteered Statement—Striking Out.   Where witness was asked what defendant wanted with him, a volunteered statement that "he said he had the best proposition he ever got hold of to offer anybody" should have been stricken, on motion.

EVIDENCE:   Opinion Evidence—Conclusion—Climate.   Testimony of a witness that defendant had stated to him that it was an ideal climate, while in the nature of an opinion, is within the rule that permits conclusions to be stated of necessity.

TRIAL:   Reception of Evidence—Insufficient Objection—"Incompetent, Irrelevant, and Immaterial."   The court was not in error in overruling objection that a question asking a witness to describe as fairly as he could the condition of the climate at a stated time was incompetent, irrelevant, and immaterial.

VENDOR AND PURCHASER:   Reception of Evidence—Misrepresentation as to Climate—Jury Question.   In a suit to rescind purchase of agricultural lands, representations concerning the climate of the region held material; and the question as to whether the purchasers relied and had a right to rely upon the same held a question for the jury.

EVIDENCE:   Reception of Evidence—Similar Conditions—Climate. In a suit to rescind the purchase of agricultural lands, where the seller had represented the climate in that part of the country as ideal, a witness who had never been on the land was properly permitted to testify as to climatic conditions 25 miles away.

EVIDENCE:   Reception of Evidence—Similar Conditions—Climate. In a suit to rescind the purchase of agricultural lands, where evidence that the seller had represented the climate in that

part of the country to be ideal had been properly received, it was error to refuse to permit him to show that, at a place not very far distant, the climate was substantially the same as it was where the involved lands were situated.

EVIDENCE: Reception of Evidence—Similar Lands at a Distance— Meeting Evidence with Like Evidence. Where testimony had been received from the plaintiff as to the quality of lands at a distance from the lands in the suit, it was error to refuse the defendant permission to meet such evidence with like evidence.

VENDOR AND PURCHASER: Rescission—Reliance on Misrepresentation—Evidence. In an action to rescind the purchase of agricultural lands, testimony as to what representations plaintiff's assignors believed, was admissible.

EVIDENCE: Opinion Evidence—Conclusion—Character of Representation. Objection to question as to whether the defendant made any statement about the land "as positive statements of fact of any kind or description" was properly sustained on the ground that it called for a conclusion as to whether what he did say constituted a positive statement of fact, as distinguished from a mere opinion.

VENDOR AND PURCHASER: Meaning of Statement—"Valley." Witness was properly refused to be allowed to testify as to what he meant by using the word "valley" in statements made, as the meaning of the word is well understood, and, if he claimed to have intended any other meaning, the other party could object that he had the right to take the word as having been used in its ordinary meaning.

EVIDENCE: Reception of Evidence—Cross-Examination. In a suit to rescind the purchase of agricultural lands, where the purchaser had testified that he relied upon defendant's statements, it was error to sustain, upon cross-examination, objection to the question, "You knew that anything he said about the land was simply an expression of opinion of his, because you knew he hadn't seen the land?"

VENDOR AND PURCHASER: Rescission—Sole Reliance on Misrepresentations. To entitle a purchaser of lands to rescind for misrepresentations of the seller, it is not necessary to show that the purchaser relied solely upon such representations.

APPEAL AND ERROR: Reception of Evidence—Cured by Other Evidence. Any error in excluding testimony as to what a cer-

tain person had told plaintiff about lands was cured where what he had been told finally got into the testimony.

**VENDOR AND PURCHASER:** Rescission—Evidence—Fraud. In a suit to rescind purchase of agricultural lands, plaintiff's testimony that he had not had any business with anyone other than defendant's agent, in connection with the buying of the land, was admissible as tending to show reliance upon the seller's agent.

**APPEAL AND ERROR:** Reception of Evidence—Exclusion of Petition in Another Suit—Harmless Error. In a suit to rescind the purchase of lands for misrepresentations of the defendant, a petition filed in another suit was properly excluded from evidence, its contents not contradicting plaintiff as to his reliance on such representations; and where it had a tendency to show that the present suit was for rescission, and the Supreme Court held that the present suit was for rescission, its exclusion was harmless error.

**APPEAL AND ERROR:** Reception of Evidence—Harmless Error— Immaterial Testimony. Any error in receiving testimony of plaintiff as to what a third person said to him, in the absence of showing that such third person was authorized to speak for defendant, was in favor of defendant, and an error of which he cannot complain, as it put before the jury something from which it might find that the plaintiff relied on someone else than defendant's agent; and where the statement was made after plaintiff had bought the lands for which he was suing to rescind, there was no error, under Section 4615, Code, 1897, in refusing to let defendant show the rest of the conversation, as the same would be immaterial.

**EVIDENCE:** Opinion Evidence—As to Railroad to Be Built. The statement of seller's agent that, though there was no railroad through the country, there would be one in a year or so, was a naked promise, and expression of an opinion; but the error in overruling an objection thereto was cured by an instruction expressly eliminating opinions and promises as to future railroads.

**EVIDENCE:** Fraudulent Representations—Evidence—Value and Amount of Land Sold. In a suit for rescission of contract of purchase of lands for misrepresentations, excluded testimony of the defendant as to how much land he owned and had sold in the territory where the land in question was sold, and the value of the lands involved, should have been received, as bearing on whether fraudulent representations were made.

**EVIDENCE:** Documentary Evidence—Admission. An affidavit by a land official of British Columbia that he had surveyed certain lands, carefully examined them, and placed them in certain classes, was insufficient for admission in evidence under Sections 4634, 4635, Code, 1897.

**PLEADING:** Insufficiency of Plea—Waiver—Estoppel. Where a petition pleads certain matters as constituting a legal rescission, and is not challenged on the ground that it failed to allege that there was an offer to place the defendants *in statu quo*, it is sufficient to prove what is pleaded in the petition, even though it would have been insufficient as a matter of law, if properly challenged.

**PRINCIPAL AND AGENT:** Acts of Agent—Fraud—Liability to Third Parties. The agent of a landowner who, by actual fraud, obtained money from the sale of lands, is liable to the purchaser thereof in an action to rescind, against himself and his principal, although he was not a party to the contract of sale, and had turned the proceeds over to the principal, and although the principal would also be liable; but there can be only one recovery.

**VENDOR AND PURCHASER:** Rescission—Negligence—Recovery Against Both Principal and Agent. A buyer will not be denied recovery against an agent and his principal on a rescission of contract for misrepresentation in sale of lands, on account of failing to read the contract and to discover that the agent was acting merely as such; for, if it were negligence, it would be immaterial, as being an agent was of no avail to the defendant agent as a defense.

**APPEAL AND ERROR:** Review—Rescission of Sale—Damages. Where a party takes the position that an action is one for rescission, he cannot complain that the measure of damages adopted by the court was such as resulted in case of rescission.

**VENDOR AND PURCHASER:** Rescission—Fraud—Measure of Damages. In a suit where the defrauded party elects to retain property purchased under fraudulent misrepresentations, and seeks damages, he is entitled to the difference in value between the land as represented and its actual value; but when he rescinds for the fraud, the proper measure of his damages is the amount paid, with interest.

**TRIAL:** Instructions—Contradictory Instructions Erroneous. It is error to give contradictory instructions.

**TRIAL:** Instructions—Applicability to Evidence. Instruction held
31  to have evidence to support the issue as to a false representa-
tion that a river was navigable.

**TRIAL:** Instructions—Insufficiency of Exceptions. An exception to
32  a part of a charge, in that it enumerates certain matters
claimed as to which there is no proof, is not good.

**TRIAL:** Instructions—Explicit Curing Inexplicit. An instruction
33  expressly telling a jury what representations it could consider,
and, in effect, that it could consider no other, limited the jury
from considering other representations which were mentioned
as being in issue, but of which there was no evidence.

**TRIAL:** Instructions—Inexplicit Instructions—Failure to Request.
34  Where some essential elements were not mentioned in a charge,
the aggrieved party should have made a request for an instruc-
tion.

**VENDOR AND PURCHASER:** Rescission—Fraud—Liability of
35  Agent—Pleading and Proof. There can be no recovery by the
purchaser against an agent in an action to rescind the pur-
chase of lands induced by the fraudulent misrepresentations
of the agent, unless the plaintiff pleads and proves that the
agent knew that representations made by him were, in fact,
false when made, and were made with intent to deceive and
defraud, and that there has been a rescission before action was
brought.

**TRIAL:** Instructions—Failure to Charge as to Rule—Requested In-
36  structions Necessary. In case of an omission to charge a rule
of law as fully as it should be done, the aggrieved party should
make a request for an instruction thereon.

**APPEAL AND ERROR:** Instructions—Insufficiency of Exceptions.
37  Where exceptions to an instruction are solely by reference to
other exceptions to prior instructions in the charge, and the
other exceptions contain nothing as to error in the later in-
struction, there is no question of error presented as to the later
instruction.

**TRIAL:** Instructions—Insufficiency of Exceptions. An exception
38  that there is no evidence of damage is not a good exception to
an instruction, in a suit to rescind purchase of lands for mis-
representations, submitting whether there was reliance on the
misrepresentations charged, and stating that reliance was es-
sential, but that the misrepresentations need not be the sole
inducing cause of the sale.

**TRIAL:** Instructions—Order of Consideration by Jury. Instruction was correct that stated that, if the jury found that the representations shown induced the buyer's action in purchasing lands, which it was claimed was induced by false representations, the next question for them to consider was whether the representations were false, in solving which question they should act on all the facts and circumstances disclosed.

**APPEAL AND ERROR:** Instructions—Exceptions—Improper Testimony—Submission of Issue. The contention that the court erred in submitting whether representations were false is not raised by showing that testimony tending to show their falsity was improperly received.

*Appeal from Pottawattamie District Court.*—THOS. ARTHUR, Judge.

MAY 15, 1919.

REHEARING DENIED OCTOBER 23, 1919.

THE plaintiff and his assignors were induced by appellant McManus to enter into contract to buy certain Canadian lands of the Grand Trunk Pacific Land Company. The purchasers made payments upon the contract. Originally, this was a suit at law, praying judgment against defendant for the sums so paid. As a result of motions filed by appellants, the suit became, in effect, an attempt of plaintiff to rescind. The right to rescind was based upon assertion that fraudulent representations made by McManus had induced the purchasers to enter into the contract. Ultimately, no damages for the alleged fraud were sought, and the claim to relief was limited to a restoration of what the purchasers had paid. The case was submitted to the jury on that theory. It found in favor of plaintiff and his assignors, except assignor Lowrey, and awarded to plaintiff and his other assignors the sums they had paid upon the contract. Plaintiff dismissed as to the claim assigned to him by Meyerring. It would seem that, though the land company is styled appellant, that no action against it was had

below: the judgment there went against McManus alone, and he alone appeals.—*Reversed and remanded.*

*John J. Hess, H. L. Robertson, L. W. Schneider,* and *F. E. Northrop,* for appellants.

*Tinley, Mitchell & Pryor,* for appellee.

SALINGER, J.—I. The plaintiff has a cross-appeal because the jury found against the claim assigned by Lowrey. In effect, the contention on this cross-appeal is: (1) That this verdict is not supported by the evidence, because fraudulent representations were made to Lowrey when the maker knew they were false; (2) that Lowrey relied upon these representations, and was induced by them to act, to his loss. This is included in the assignment that the court erred in overruling the motion of Lowrey for a new trial. We might dispose of it by pointing out that this motion contains many grounds, and that such an assignment is too general. But we have elected to pass upon that part of it which asserts that the verdict is contrary to the evidence. Our examination has satisfied us that we cannot interfere with the verdict on that ground.

There are also assignments on the taking of testimony, the giving and refusing of instructions, and misconduct of defendant's counsel. We find no prejudicial error in the taking of testimony, nor in instructing.

It is asserted that counsel for defendant were guilty of misconduct in the trial, "especially in presentation to the jury, in their referring to Lowrey as the moving force and principal actor in the case, and stating that Lowrey had induced the other assignors and plaintiff to repudiate their contracts and to institute this suit, said statements being wholly without foundation in the evidence, and intended to prejudice the jury against

1. APPEAL AND
ERROR: misconduct of
counsel: discretion of court:
harmless
error.

Lowrey and against plaintiff as to the Lowrey claim;" and we are told that, "for other instances of this conduct on the part of counsel for defendant, reference is hereby made to the exceptions made of record." If it may be said this is a sufficient presentation, it fails to exhibit such misconduct as requires a reversal for refusal to grant a new trial therefor.

II.  We are of opinion that appellant is right in claiming that this is a suit to rescind, and none other.  We reach this conclusion for the following reasons:

Defendant moved to strike certain counts of the petition on the ground that the suit was one to rescind, and that these were inconsistent with a suit to rescind, and therefore immaterial and redundant, because they claim a measure of damages which rules only in actions for damages on account of fraud and deceit. This motion

2. APPEAL AND ERROR: rescission of sale: theory of case.

was sustained, and no exception was taken to the ruling. Later, plaintiff dismissed these counts without prejudice; wherefore, no appeal from this ruling could be taken by plaintiff, and none was attempted.  So, it became the law of the case: (1) That this is a suit to rescind, and none other; (2) parts of the petition that pleaded facts as constituting a rescission were not stricken, and still remain in the petition; (3) while the petition sets out facts that might base an action in deceit, and while the prayer asks a money judgment, it is plain this prayer is based upon the petition as it was before said counts were stricken therefrom and dismissed by plaintiff, and the allegations of fraud found in the petition are not inconsistent with seeking a rescission, because the rescission asserted is based on the claim that fraud was practiced; (4) the court charged that recovery must be limited to what was paid by plaintiff and his assignors, with interest.  The appellee makes no complaint of these instructions, and the measure of damages stated in the instruc-

tions is, as we shall presently see, the one due on rescission.

The conclusion reached at this point works an over-ruling of the position of appellee that, because appellant asked these counts to be stricken, and that appellee be made to elect, appellant may not now claim that this is a suit in rescission.

III. There are 130 "Errors relied on for reversal," and they cover over 20 pages of small print. The 31 "Brief Points" are voluminous. It is neither permissible, desira-ble, nor practicable that an opinion should exhaust all this exhaustive material. Ex-haustive as the presentation is, and though there is more "over-presentation" than we disapproved of in *State v. Minella*, 177 Iowa 283, many mat-ters can be disposed of because their statement is too indefi-nite. As to others, no reference is given to the record. Still others consist of lump and blanket objections, and of motions to strike the whole of the testimony of witnesses. Many times the objection is merely, "incompetent, immaterial, and irrelevant," under conditions where such is not a sufficient objection for review. In others, exclusions are complained of without profert of what was proposed to be proved where the circumstances are such that profert should have been made. Despite whatsoever exceptions to instructions may have been added by an amendment to motion for new trial, some items may not be reviewed because the exceptions taken are inadequate. And many "Errors relied on for re-versal" are not reviewable because no brief point covers them.

IV. Testimony received over objection was to the ef-fect that defendant represented the land to be in a good agricultural country, in a good corn country; that it was in

3. APPEAL AND ERROR: review: no brief points.

**4. EVIDENCE: opinion evidence: nature of land and crops.**

a good fruit country; and that he exhibited apples, with claim they had been grown there; that all kinds of grain grew in that country; that this land grew from 70 to 100 bushels an acre, and wheat in proportion, all through; that it had been classed by the Canadian government as being No. 1 land, and "belonged to the first class;" that it was covered with a luxuriant growth of grass; that 25 per cent of it was covered with timber; that there was no timber on the land, except once in a while a poplar tree; and that a railroad had been surveyed to a point on or near it. We think that none of these were objectionable for being the mere statement of an opinion. Moreover, all these representations were pleaded in the petition, and no challenge was interposed to such petition.

### 4-a

Complaint is made that one Montgomery was permitted to testify to a naked conclusion. It is probably true that the question asked Montgomery did call for a conclusion.

**5. EVIDENCE: opinion evidence: conclusion: agricultural land.**

It was: "When you examined the soil of these four sections, did you reach any conclusion as to whether or not it was agricultural land?" Whatever vice there may be in the interrogatory, it was cured by the answer. It did not state a conclusion, and no objection was made to it. The answer was that witness had knowledge of what constitutes agricultural land, and that the land in question was not such land. This is a statement by one competent to speak, that certain lands examined by him were not agricultural land. If that be in any sense a conclusion, it is within the class of conclusions that may be received in evidence.

### 4-b

Ellis was asked what McManus said he wanted with him (Ellis), and answered:

"Well, he talked about British Columbia land to me and my wife. He said he had the best proposition he ever got hold of to offer anybody."

It will be observed the question was not objectionable, and no objection to it was made. If there be anything objectionable, it is in making a volunteer answer that Mc-

6. TRIAL: reception of evidence: volunteered statement: striking out.

Manus said he had the best proposition he ever got hold of to offer anybody. A proper motion to strike this volunteer statement was made, including that it was an expression of opinion and mere trade talk. The motion should have been sustained.

#### 4-c

Good was asked what, if anything, McManus said to him in reference to the climate in that section, and answered he stated it was an "ideal climate." No objection

7. EVIDENCE: opinion evidence: conclusion: climate.

was made to the question. But there is an assertion in the abstract that the witness did not give time for interposing such objection. Without deciding that such an assertion in a motion to strike proves the fact asserted, we have to say that it was not error to receive this testimony. It is in the nature of an opinion, but we think it falls within the rule that permits conclusions to be stated, of necessity.

8. TRIAL: reception of evidence: insufficient objection: "incompetent, irrelevant, and immaterial."

We think the court was not in error in overruling the objection that same was incompetent, immaterial, and irrelevant, to a question which asked a witness to describe as fully as he could the condition of the climate at a stated time.

#### 4-d

The witness Rouse was asked, on re-examination, what he had to say as to the climate's being substantially the same up where his wife's land is located as it is down by the

Black Water. To this, the objection that

**9. VENDOR AND PURCHASER: reception of evidence: misrepresentation as to climate: jury question.** same was incompetent, irrelevant, and immaterial was sustained, over due exception. He was next asked whether there was any substantial or material difference between the conditions of the climate and other conditions at the point he had referred to, where his wife owned a section of land in the Black Water country; and there was the same objection, ruling, and exception. We may assume the witness spoke to climate at a point some 25 miles from the lands involved in this suit. We hold that the representations alleged to have been made concerning climate are material. The objection should have been overruled. While we do so with some reluctance, we hold, also, that it was a question for the jury whether the plaintiff relied upon such representations, and whether he had the right to rely on them. We hold there was sufficient evidence of scienter as to these representations. At any rate, there is a plea, not only that the representations were fraudulent in fact, but made recklessly, and as of personal knowledge, though the defendant did not possess such knowledge. The jury could, at the least, find that the representations as to climatic conditions were thus recklessly made.

**10. EVIDENCE: reception of evidence: similar conditions: climate.** We hold, further, that, though Rouse may never have been upon the very land in question, it was not error to let him speak as to the climatic conditions at a point some 25 miles away from this land; that it was, at the least, a question for the jury whether the climate within that distance of the land was not the same as that on the very spot where the land lay.

4-e

As we hold it was not error to receive testimony that defendant had represented the climate in that part of the country was ideal, it follows it was error to refuse letting

the defendant show that, at a place not very

**11. EVIDENCE:**
**reception of**
**evidence: sim-**
**ilar condi-**
**tions: climate.**

far distant from the lands involved, the climate was substantially the same as it was where the lands involved lie. Climates do not change within short distances. Evidence of what the climate is in Des Moines is some evidence on what it is in Ames.

### 4-f

The court permitted testimony as to the quality, fitness for agricultural use, appearance, and the like, of lands

**12. EVIDENCE:**
**reception of**
**evidence: sim-**
**ilar lands at**
**a distance:**
**meeting evi-**
**dence with**
**like evidence.**

quite distant from those involved in this suit. While, as said, it is proper to receive evidence as to the climate a short distance from the land in suit, it does not follow that testimony of quality of lands at a distance is receivable. The record is in peculiar condition at this point. The appellant complains of testimony touching the quality of lands at a distance from the lands involved in the suit. He also complains that he was not permitted, in aid of his case, to prove the condition of and quality of crops upon lands distant from those in suit. We need not determine whether it was error to receive such testimony; because, whether or not it was, it was also error to refuse letting the defendant meet such evidence with like evidence. The plaintiff fixed the trial theory, and thereby estopped itself to shut out counter proof, based on the like theory. See *Spaulding v. Chicago, St. P. & K. C. R. Co.*, 98 Iowa 205, at 215; *Miller v. Miller*, 154 Iowa 344; *Trott v. Chicago, R. I. & P. R. Co.*, 115 Iowa 80, at 89; *Westbrook v. Muscatine N. & S. R. Co.*, 115 Iowa 106. Whether it was or was not error to let the plaintiff show what witnesses found distant land to be like, it certainly was error not to let the defendant meet this testimony by evidence that other land not more distant was of good quality, etc. We may accept the statement of the appellee that "this testimony is

very material as bearing upon the truth or falsity of these representations," but are unable to see how the fact that testimony is valuable to the plaintiff furnishes any reason for letting him adduce it and then refusing to let his adversary meet it with the same class of evidence.

4-g

Over objection that it was incompetent, for calling for a conclusion, one witness was allowed to answer the question upon what, if anything, he depended as to the location of this land when he agreed to buy it, and whether he believed a specified statement alleged to have been made by the defendant. And another was permitted to say, over like exception, that, unless he had believed everything that McManus said, he would not have bought, nor given his note. We think there was no error here, and that testimony as to what representations a witness believed, and that he relied upon them, may be direct. Indeed, appellant himself insists that, where one is charged with a certain intent, he may testify what that intent, in fact, was. This assertion is the predicate for claiming error as to the following: Defendant was asked whether he made any statement to Peterson at any time about this land or the crops, or what it would produce, "as positive statements of fact or any kind or description." It was not error to sustain to this an objection that it called for a conclusion. It is not a statement of the intent, purpose, or mental condition of the witness, but calls for his opinion as to whether what he did say constituted a positive statement of fact, as distinguished from a mere opinion.

**13. Vendor and Purchaser: rescission: reliance on misrepresentation: evidence.**

**14. Evidence: opinion evidence: conclusion: character of representation.**

Neither was it error not to let defendant testify what he meant by using the word "valley" in such statements as he did make. The meaning of the word is well understood.

If he would have answered that he used it
**15. VENDOR AND PURCHASER: meaning of statement: "valley."** in the accepted sense, refusal to let him answer is not prejudicial. If it was his intention to claim that he used it in some unusual sense, the plaintiff had the right to object that he could not be bound by the undisclosed purpose to use the word in a sense which differed from what plaintiff would naturally understand by the use of that word.

4-h

Good testified McManus told him that he went "part way,—seems to me quite a little distance,—but I don't want to say." He was then asked by defendant, "You knew that anything he said about this land was simply **16. EVIDENCE: reception of evidence: cross-examination.** an opinion of his, because you knew he hadn't seen the land?" To this, the objection that it was incompetent, because calling for a conclusion of the witness, was sustained. The complaint of this ruling is that it was proper cross-examination, because Good had testified in chief, and properly so, that he believed and relied upon the statements made by the defendant, and, if he believed McManus was speaking merely from hearsay, and simply expressing an opinion, it bears on whether Good did rely, as he had testified in his examination in chief; that, while it may be a conclusion that McManus was simply voicing an opinion, it is a conclusion permissible of necessity; and that there is no other method by which it could be put before the jury, how the witness did understand the representor; that, even as the witness might say, in terms, that certain statements made to him were believed by him and induced him to act, and that he would not have acted without them, may he be compelled to say on cross-examination how what was said to him impressed him. It seems to us that the rejected testimony was proper cross-examination. Most clearly, that part of it which assumed to the witness that he knew Mc-

Manus had not seen the land, was proper to show on cross-examination, as rebutting the claim of reliance made by showing that the witness knew that no more than an opinion was being expressed. Certainly, it is normal to place more reliance upon something understood to be the affirmance of a fact from personal knowledge than upon a statement that discloses it rests on hearsay, and is nothing but the expression of an opinion. It is, however, further insisted the court should have charged upon the effect that should be given such testimony as Good was not permitted to give. After the court sustained objections to this testimony, there was no evidence to warrant it in giving such an instruction. The complaint should not be that such a charge was not given, but that an erroneous ruling on testimony brought it about that no such instruction could be given. We cannot find that any witness did say he understood McManus to be expressing an opinion founded on hearsay. So, as said, there was no basis for such an instruction. Moreover, it is questionable whether any exception to any instruction, or any taken to the charge as a whole, urges this precise point.

### 4-i

As to Peterson, it is urged he relied on things other than the representations of McManus. It may be conceded he did place some reliance on things other than these representations. These other things have very little persuasiveness, and, in all probability, had little or no effect. Be that as it may, the court rightly instructed that the representations of defendant need not have been the sole reliance.

17. VENDOR AND PURCHASER: rescission: sole reliance on misrepresentations.

It is, however, further complained it was error not to allow testimony as to what Cupp had told Peterson about this land. That is, it is not only complained that the jury

was permitted to disregard evidence of reliance upon other things, but that the court should have permitted more evidence of these other things than it did.  If there was error in excluding this testimony as to Cupp, it was cured, because it was finally got into the testimony what Cupp had to do with the matter, in that Peterson testified that, while he knew Cupp had bought lands, and knew it from Cupp, the latter merely told him what he paid, and did not tell him how much land he had bought.

**18. APPEAL AND ERROR: reception of evidence: cured by other evidence.**

Peterson was asked whether he had any business with anyone other than McManus, in connection with buying this land and signing the contract for it; and objection to this was made and overruled.  The witness answered, "No, sir."  While it was not essential that McManus should have been the sole inducing cause, the plaintiff had the right to claim in testimony anything that tended to show his reliance was on McManus. That is the most that this testimony effects, and its reception was not error.

**19. VENDOR AND PURCHASER: rescission: evidence: fraud.**

4-j

It was not error to reject a petition claimed to have been filed in another court on behalf of Peterson.  The contents of the paper, assuming it to bind Peterson, did not contradict him; for, in that petition, the allegation was that Peterson believed said representations to be true, and relied thereon.  So, of maps, plats, etc.  Peterson did not claim on this trial that literally nothing induced him to act except the spoken representations of McManus; and maps, literature, and the like may amount to representations.  The most the petition could have done was to have a tendency to show the immaterial fact that, while Peterson relied upon the representa-

**20. APPEAL AND ERROR: reception of evidence: exclusion of petition in another suit: harmless error.**

tions made, he also relied upon the exhibition to him by Mc-
Manus of printed literature, maps, plats, blue prints, num-
bers, etc. Possibly, this petition had a tendency to prove
that this is a suit to rescind. But, as we hold it is such
suit, exclusion of help to establish what is established with-
out such help is, of course, harmless.

### 4-k

The plaintiff testified one Cupp made him a visit; just
mentioned this land to him one day when Cupp was with
him, fixing plaintiff's kitchen and working for him on his
farm; that Cupp didn't say how much he
had bought, but said he had bought some
land in this locality before plaintiff bought
his. Appellant complains that this testi-
mony should not have been received at all,
without evidence that Cupp had authority
to speak for defendant. We are unable to agree. If it was
error to receive this testimony because there was no show-
ing of such authority, it was an error in favor of the ap-
pellant. It put before the jury something from which it
might find that plaintiff relied on someone other than de-
fendant. There is the further complaint that, at any rate,
since plaintiff was allowed to go into what Cupp said to
him at all, then, under the provisions of Code Section 4615,
it was error not to let the defendant show what more, if
anything, Cupp said. The trouble with that is, the talk oc-
curred after plaintiff had bought his land. It was imma-
terial what Cupp said to plaintiff: First, because of
appellant's argument that whatever Cupp said could not
bind the defendant; and second, that, no matter what Cupp
may have said about how much land he had bought in this
locality, or whether he said the land was good or poor, it
has no bearing in this suit, because plaintiff had bought.
We have no occasion to speak to what the situation would
be if the Cupp conversation had been before plaintiff

21. APPEAL AND
ERROR: re-
ception of
evidence:
harmless error:
immaterial
testimony.

bought. What does it matter that Cupp had no authority from defendant, or that he may have said to plaintiff that the very land in suit was either good or bad? Before Cupp said anything, the defendant had made whatever representations he did make, and these had induced the action of the plaintiff.

### 4-l

Peterson was allowed to say that McManus, in connection with a statement that, while there was no railroad in that country at that time, a railroad was surveyed through that land, stated "that it would be there in a year or so." This last statement is clearly a naked promise and expression of opinion, and objections made thereto should have been sustained. But while this is so, we cannot agree with appellant that this error was incurable. We think it was cured by an instruction which expressly eliminates opinions and promises as to future railroads.

22. EVIDENCE: opinion evidence: as to railroad to be built.

### 4-m

Defendant was not permitted to adduce testimony as to what was the market value of the lands involved, at or about the time it is charged he made false and fraudulent representations concerning the value and quality of said lands. Without aid, we would find it difficult to understand the reasoning upon which this testimony was excluded. We are enlightened as to what the reason probably was by the argument for the appellee. That argument cites Elliott on Contracts (1913), Section 91, for the proposition that one who induces another to act by false and fraudulent representations may not be heard to say that his victim suffered no real injury therefrom. He cites *Knappen v. Freeman,* 47 Minn. 491 (50 N. W. 533), and *MacLaren v. Cochran,* 44 Minn. 255 (46 N. W. 408), which, in effect, announce the correct rule that, on rescission, the

23. EVIDENCE: fraudulent representations: evidence: value and amount of land sold.

difference between the represented and actual value is not material. The basic thought of appellee is that, whatever might be admissible on market value, were this a suit on contract, it is not receivable in a suit to rescind for fraud. These positions rest upon a misconception of the purpose for which such testimony is receivable in a suit to rescind, based upon false and fraudulent representations made. The appellant, too, at times falls into the same error, and defends the admissibility of this rejected testimony on the ground that it tends to show the fraud did no injury. That is not the true basis of its admissibility. It is admissible because it bears on "whether the false representations were made" (*Vaupel v. Mulhall*, 141 Iowa 365, 375), and on whether there was fraud in the representations (*Halligan v. Iowa S. L. Co.*, 170 Iowa 582). It bears on the question of good faith in making the representations. *Deere & Co. v. Wolf*, 77 Iowa 115; *Clausen v. Tjernagel*, 91 Iowa 285. This is almost self-evidently true.

The same is true of rejecting testimony on part of McManus how much land he owned in the territory where the land in question lies, and how much land he had sold there. We cannot agree with appellee that this is irrelevant, as, say, is the church connection of McManus.

4-n

The plaintiff pleaded a representation that the government of British Columbia had put this land into the classification of "First-class." To show the falsity of this, the following was admitted, over apt objection:

24. EVIDENCE: documentary evidence: admission.

"Dominion of Canada: Province of British Columbia. In the Matter of the sale of Crown Lands under Section 30 of the 'Land Act.'

"I, John F. Templeton, B. C. L. C. of Victoria, in the province of British Columbia, do solemnly declare that I have surveyed lot as below in the Group 1 Carribo District,

containing 640 acres, for the provincial government, and have made careful examination of said land and classify the same as follows: Lot 1,321 second class, 160 acres S. E. Quarter; 160 acres S. W. Quarter, second class; 160 acres N. W. Quarter, second class; 160 acres N. E. Quarter. * * * And I make this solemn declaration conscientiously believing it to be true and knowing that is of the same force and effect as if made under oath and by virtue of the Canada Evidence Act, 1893."

"All issues of fact in ordinary actions shall be tried upon oral evidence taken in open court, except that depositions may be used, as provided by law." Code Section 3651.

Code Section 4634 provides that:

"A copy of the field notes of any surveyor, or a plat made by him and certified under oath as correct, may be received as evidence to show the shape or dimensions of a tract of land, or any other fact the ascertainment of which requires the exercise of scientific skill or calculation only."

The reception of this paper is not sustained by this statute. It does not as much as assert, except possibly by inference, that its maker is a surveyor. It does not purport to be a copy of "Field Notes," nor is it any attempt "to show the shape or dimensions of a tract of land," nor an attempt to deal with any fact "the ascertainment of which requires the exercise of scientific skill or calculation only." If admissible, it must be because of Code Section 4635, which admits "duly certified copies of all records and entries or papers belonging to any public office, or by authority of law filed to be kept therein." The paper does not show on its face that it is a copy of any record; much less that it is a certified copy of any record; nor that it is a copy of any record or entry "belonging to any public office or by authority of law filed to be kept therein." Nor could any recital in the affidavit itself supply the basis for admitting such affidavit in evidence. The only attempt to qualify the

paper is found in statements by counsel for appellee in offering the paper. We will assume that, if these assertions by counsel are evidence of what the offered paper is, and evidence that it is duly authenticated and certified, then its reception was warranted. But objection to competency was made after these assertions had been, and there was no agreement that the matters asserted were true. Now, surely, in these circumstances, these assertions by counsel in offering the paper are not any evidence of the qualification and foundation asserted. In the state of the record, we cannot hold that our statutes make the reception of this so-called affidavit competent. The same is true of another paper, which counsel asserted was a record of the surveyor general's department. These documents should not have been received.

V. The very cases cited by appellant show that, in considering whether or not there was a right to rely on representations, it is not easy to apply *stare decisis*. The effect of these cases is that, while certain conditions are important, yet each case must be decided upon its own facts. And that is so of necessity. This case is close to the line. There was no confidential relationship between McManus and the buyers from him, except that, possibly, there was a slight aspect of such relationship between defendant and Ellis. Ellis, however, took time to consider the proposal made him by defendant. The defendant told all the buyers that the country was new, and that, at that time, it would be difficult for them to locate the lands, even if they attempted to inspect them. They knew it lay in Northern Canada. The price fixed was low. Most, if not all, of the buyers were experienced Iowa farmers; yet they claim to have believed that this land had an ideal climate and a California productiveness. If we were called upon to determine whether these buyers relied on such representations as this, and whether they had the right to rely upon it such, we

might not all be agreed. But as there must be a reversal on other grounds, we do not pass on this point, in accord with the rule of *State v. Asbury,* 172 Iowa 606.

The point is made as to Peterson that there was not enough evidence of *scienter* to send the case to the jury. We cannot go into details on such points, and it must suffice to say that, in our opinion, there was sufficient evidence.

5-b

Appellant urges that this is a case of rescission wherein the plaintiff must fail where, as here, he fails to show competently that he had put or offered to put the other *in statu quo.* Appellees deny that this is such a case. Assume that it is. But the petition alleges just what plaintiffs did to effect a rescission, and that what is pleaded was sufficient to effectuate one. No allegation claims that the matters pleaded as effecting a rescission put defendants *in statu quo.* If that was essential to a recovery, the petition failed to state a cause of action. It was not challenged on that ground. It was never asserted that all pleaded failed to show a placing of the defendant *in statu quo,* and that it was necessary to have such an allegation; nor that the petition failed to show a right to effect rescission. We have so often held that, in such state of the pleadings and of the record, it will suffice to prove what is pleaded, even if that is not sufficient in law when proved, that we will forebear citing cases.

25. PLEADING: insufficiency of plea: waiver: estoppel.

VI. We agree with appellant that plaintiff and his assignors knew that, in dealing with them, McManus was acting as an agent only. We agree with him that this suit is to be treated as one seeking a rescission. But are the deductions which appellant makes from these premises sound? He contends that, if one who seeks to rescind knows he is dealing with an agent, he must seek

26. PRINCIPAL AND AGENT: acts of agent: fraud: liability to third parties.

his relief from the principal, and that, at most, he can reach the agent only if it be shown that the principal is insolvent. No insolvency is shown in this case. And if the argument is tenable, of course, the trial court erred in allowing a recovery from the agent. It may be conceded that, if a principal receives what his agent has obtained for him by fraud, the principal must restore what he so got, even if he took it in all innocence. But does that prove that an agent who obtains property by a deliberate fraud may not be made to restore what he has so obtained, if he sends the fruits to his solvent principal? That the innocent principal can be compelled to restore, rests on the reasoning that he has no title to property obtained for him by his agent by means of a fraud. But how does that absolve the agent from restoring what his own fraud took from the person he dealt with? Agent or no, he is liable because of his tort. This, appellant seems to appreciate, because he urges that this is not an action in tort—which overlooks that the rescission is, as to the agent, due only if it is proved that his actual fraud took the money of the buyer from the buyer. How can the responsibility for this fraud be changed by the fact that his principal was liable also, but under *respondeat superior?* Of course, if the principal makes restoration, there is an end. But if he does not restore, why should not the agent be made to return money that would never have reached the principal if the agent had not, by fraud, induced the one he dealt with to part with the money? Fraud and duress are akin. Suppose one who induces another to contract for the purchase of land is known to be nothing but an agent. If he compelled the other to sign the contract and pay him part of the price by a threat to kill him, could he escape restoring what he had thus obtained, merely because he turns the money over to an innocent principal who, by possibility, might be compelled to restore? Speaking concretely, and on the assumption that fraud and duress

are akin, we hold that, where an agent, by actual fraud, obtains money, he may be made to restore it in a suit to rescind, though he is not a party to the contract, and though he has turned the money over to his principal. If this were not so, an agent needs but to serve a principal who lives in a remote part of Africa, and upon whom it is difficult to make service, because he can be served in Africa only, and so make himself safe, if he transmit the money to his principal before the victim can seize it. The whole of the argument for appellant overlooks that, while rescission is the remedy sought here, the ground for seeking that relief is the tort of McManus. The right to rescind has no support unless what was obtained was parted with because of the fraud of McManus. It does not matter he is no party to the contract, or that he obtained no personal advantage by the transaction. If his fraud deprived the plaintiff of property, that fact alone supports a judgment that McManus restore this property. The rule of agency invoked by the appellant has its place in the law of contracts, but not in the law of torts. No one may claim the status of an agent, and insist upon *respondeat superior* in the criminal law. The relation of principal and agent does not exist there, beyond the very limited place it has in the law of conspiracy.

When this basic reasoning is kept in mind, there is nothing in *Bosley v. Monahan*, 137 Iowa 650, the main reliance of appellant, that conflicts with what we now hold. True, that case decides that the agent there should not be compelled to repay what he received, and should in no event be held for more than he retained for himself,— and not for that, except as a secondary liability. In the *Bosley* case, the agent made representations that proved to be false; but there is no claim of *scienter*. Of course, the naked fact that an agent makes a representation which proves false constitutes no tort. It may have been made in

all innocence. The rule prevailing in such a case has no application where the basis for claiming rescission is that the agent should restore what his deliberate fraud has deprived the plaintiff of. Neither has *Stacey v. Robinson,* 184 Mo. App. 54 (168 S. W. 261), any applicability. In that case, plaintiff claimed that fraudulent representations of the defendant induced plaintiff to loan money to one Smith, with the notes of one Pickard and certain deeds of trust to Pickard as collateral. It was rightly held that plaintiff could not recover damages, even if the title exhibited in the trust deeds to Pickard had failed. This was done on the ground that no effort was made to recover, either from Smith, the borrower, or from Pickard, and that there was no evidence that either was insolvent. The essence of the case is (and it so declares) that no damages for fraudulent representations may be recovered where it is not made to appear that the representations caused any injury. This plaintiff does not ask McManus to pay damages for loss through fraudulent representations. He does ask that he restore what was parted with through his fraud, and that his principal be satisfied with once more owning the land which was sold by fraudulent representations of his agent. In the last analysis, the *Stacey* case but holds that where one loans money on the false representation that certain collateral security is good, he makes out no case for damages where, for all that appears, the money loaned can be recovered even though the collateral was not as represented. The case of *Wimple v. Patterson,* (Tex.) 117 S. W. 1034, is, in effect, the mere announcement of the practice rule that the liability of an agent for inducing by fraud a sale and payment must be declared on in an action in tort, because the agent is not a party to the contract. We doubt whether such rule of practice obtains in this jurisdiction, where forms of action are abolished, and, at any rate, are not inclined to follow

the *Wimple* case if it holds what appellant contends for it. The case of *Kennedy v. McKay,* 43 N. J. L. 288, is another practice decision, and holds no more than that an *innocent* vendor cannot be sued in tort for the fraud of his agent in effecting a sale, and that, in such case, the vendee may sue the vendor in assumpsit, or may sue the agent for the deceit. We find nothing in *Fidelity Fund Co. v. Vaughn,* 18 Okla. 13 (90 Pac. 34), that has any bearing on the relative liability of principal and agent where false representations by agent to buyer are involved.

We are persuaded the court did not err in submitting the case on the theory that plaintiff was not barred by law from making defendant liable for what payments had been made to him, even though plaintiff knew defendant was acting as an agent, only.

### 6-a

Appellant contends that plaintiff must fail because of his gross negligence in not reading the contract. That rule has no application here. All that would have been revealed, had the contract been read, was that McManus was acting merely as an agent. If there was negligence here, it was an immaterial negligence; for we hold that being an agent is of no avail to the defendant.

27. VENDOR AND PURCHASER: rescission: negligence: recovery against both principal and agent.

### 6-b

Appellant urges that plaintiff has failed to make a case, because he has not shown that the land involved was worth less than the price contracted for; and that the court adopted the wrong theory in permitting him to show, instead of the difference between the represented and the actual value, the amounts that plaintiff and his assignors had paid, with interest, and to instruct that such was the measure of plaintiff's recovery. Thus, appellant, after taking the position in one part of his brief that

28. APPEAL AND ERROR: review: rescission of sale: damages.

this is a suit in rescission, complains, in another part of the brief, that the court erred in dealing with the case as being a suit for rescission. As we have sustained the contention of appellant that this is a rescission suit, *simpliciter,* it is not open to appellant to say that the measure of damages adopted by the court is erroneous.

The difference in value between land if as represented, and its actual value, is properly the measure, in actions for deceit, wherein the defrauded party elects to retain the property and to seek damages to make himself whole for having, through fraud, paid more than the land is worth. But when one rescinds for fraud, inducing him to buy, he does not keep the property. He is not concerned with its true value, because the rescission makes it the property of the seller. The seller, to whom it is returned, is not concerned with the difference in value between lands such as he represented, and the land as it actually was. Rescission restores it to him, whatever it is worth. In a word, if rescission is due for fraud, the remedy effects restoration to the *status quo.* The seller receives all he parted with; the buyer, all that he paid. It follows that the trial court adopted the correct theory on this head. See *Watland v. Quaintance,* 186 Iowa 1271.

29. VENDOR AND PURCHASER: rescission: fraud: measure of damages.

VII. True, it is error to give inconsistent and contradictory instructions. We are unable to find any such, or any exception to the charge that asserts such contradictoriness.

30. TRIAL: instructions: contradictory instructions erroneous.

7-a

Assuming there is sufficient exception to present the point, we cannot agree that the instructions were, at any true sense, such a copy of the pleadings as justifies a reversal.

7-b

It is complained the court instructed as to the effect of a false representation that the Black Water River was navigable, when there was no evidence of such a representation. True, plaintiff testified that nothing was said about that river. But appellant has overlooked the testimony of Lowrey that defendant said "the Black Water River was navigable for sixty miles." Appellants' Additional Abstract, Page 3, lines 23, 24.

31. TRIAL: instructions: applicability to evidence.

VIII. It is not easy to be sure of the point made; but we gather one complaint to be that, in the part of the instructions that stated the issues to the jury, alleged representations as to which it is claimed there is no evidence were set out, as well as representations concerning which there was evidence. To begin with, one exception to the instruction stating the issues is, there is neither plea nor proof that McManus had knowledge, when he made the representations, that the same were false. The petition does have such an allegation, and we hold there was enough evidence to send that allegation to the jury. The other exception is ambiguous, but we construe it to be merely a complaint that this part of the instruction states some claim which there is no evidence to sustain. It is not a good exception to that part of the charge that it enumerates matters claimed, as to which there is no proof. It was decided in *Powers v. Iowa Glue Co.*, 183 Iowa 1082, that it is not erroneous merely to state that a party is making a claim, even though there be no evidence to support such claim, and especially so where it is distinctly charged, in the substantive part of the instructions, that such claim is not supported

32. TRIAL: instructions: insufficiency of exceptions.

by the evidence. In Instruction 10, the jury was expressly told what representations it had the right to consider, and, in effect, that it could consider no others; and the statement of what may be considered is so limited as to exclude the representations the statement of which, in the statement of issues, appellant complains of.

33. TRIAL: instructions: explicit curing inexplicit.

It is intimated that the court erred by failure to instruct clearly and specifically that it must be found from the evidence that defendant knew the alleged representations were false at the time he made them, and made them to induce plaintiff to go into the contract, and with intent to cheat and defraud. We think that, in fair effect, the jury was so instructed, and that the charge did not disregard essentials. The most that may be said is that some elements were not mentioned in terms. The remedy for that was a request for instruction.

34. TRIAL: instructions: inexplicit instructions: failure to request.

### 8-b

It is urged there can be no recovery unless plaintiff pleads and proves defendant knew that representations made by him were, in fact, false when made, and were made with intent to deceive, cheat, and defraud, and that there had been a rescission before action brought. That is all true, but we find nothing in the record that offends against it. At least, no exceptions reserved present any complaint that this rule was disregarded. As we have already said, there may have been an omission to charge this rule as fully as might be done, and, as said, the remedy for that is offering instructions and assigning error upon their refusal.

35. VENDOR AND PURCHASER: rescission: fraud: liability of agent: pleading and proof.

36. TRIAL: instructions: failure to charge as to rule: requested instructions necessary.

IX. The brief develops that the complaint of Instruc-

tion 19 is that it permits a preponderance to make a case on circumstantial evidence, and should have charged that he who has the burden must, by the circumstances, exclude any theory other than the one upon which he relies. The exceptions to this instruction do not so much as suggest such point. Following *Powers v. Iowa Glue Co.*, 183 Iowa 1082, we must decline to review the giving of this instruction, even if it were erroneous,—as to which we express no opinion.

Instruction 11 is but a charge that the first question for the consideration of the jury is what representations McManus made. We are unable to see how this can be said to be an erroneous charge. Be that as it may, the exceptions to it are solely by reference to exceptions made to Instructions 9 and 10. Those exceptions contain absolutely nothing that urges that such an instruction as No. 11 is erroneous.

37. APPEAL AND ERROR: instructions: insufficiency of exceptions.

Instruction 12 submits whether there was reliance, and charges that reliance is essential, that the representations must have been believed, and that, while this belief must have induced the action of the complainants, it is not essential that these representations were the sole inducing cause. One exception is that this is erroneous because there is no evidence of damage. That is not a good objection to this instruction. All other exceptions are once more by reference, and the exceptions referred to complain of nothing found in Instruction 12.

38. TRIAL: instructions: insufficiency of exceptions.

Instruction 13 charges that, if the jury find that the representations shown induced the action of plaintiff, the next question for consideration is whether these represen-

tations were false, and that, in solving that question, the jury should act upon all apt facts and circumstances disclosed in the evidence. This instruction is correct. The exceptions to it are once more by reference to other exceptions, which complain of nothing found in Instruction 13.

**39. Trial: instructions: order of consideration by jury.**

This is so of Instructions 14, 15, and 16: that is to say, whether these instructions are or not correct statements of the law, no point raised against them in the argument was raised by exception to them.

Other complaints of instructions are hypercritical, and do not require extended mention.

### 9-a

The contention that the court erred in submitting whether the representations were false is not raised by showing that testimony tending to show their falsity was improperly received. Though but one of the representations were true, yet, if a single one was false, submitting falsity would not be instruction without the support of evidence. In such case, the objection is not that there is no evidence that any representations were false, but that some of the testimony received to prove falsity should not have been received. See *Powers v. Iowa Glue Co.*, 183 Iowa 1082; *Collins v. Iowa Mfrs.' Ins. Co.*, 184 Iowa 747.

**40. Appeal and error: instructions: exceptions: improper testimony: submission of issue.**

For the errors pointed out, the judgment below must be reversed.—*Reversed and remanded.*

Ladd, C. J., Weaver, Evans, and Preston, JJ., concur.