**CADY et al. v. MURPHY.**

No. 3570.

Circuit Court of Appeals, First Circuit.

Aug. 15, 1940.

McLELLAN, District Judge, dissenting.

Richard Wait, of Boston, Mass., and Robert Hale, of Portland, Me., for appellants.

Richard S. Chapman, of Portland, Me. (Nathan W. Thompson, of Portland, Me., on the brief), for appellee.

Withington, Cross, Proctor & Park, Lothrop Withington, and Edward C. Park, all of Boston, Mass., amici curiæ for Boston Association of Stock Exchange Firms.

Before MAGRUDER and MAHONEY, Circuit Judges, and McLELLAN, District Judge.

MAGRUDER, Circuit Judge.

This appeal requires for its disposition an interpretation of § 12(2) of the Securities Act of 1933,[1] 48 Stat. 74. The challenged judgment for plaintiff-appellee cannot stand if, as the defendants maintain, the liability imposed by § 12(2) applies only to owners of securities, selling their own property as principals.

The plaintiff is a small securities broker and dealer doing business in Portland, Maine, under the name of Clifford J. Murphy Co. For many years he had extensive dealings with the defendants, a firm of stock brokers carrying on a general brokerage business under the name of Rhoades & Company with offices in New York and Boston. Negotiation of the transaction out of which the present lawsuit arose was conducted by Murphy and Frank Lynch, the head trader of Rhoades & Company, by means of numerous telephone conversations between Boston and Portland. Early in March, 1937, Lynch persuaded Murphy to purchase voting trust certificates representing 1,700 common shares of South American Utilities Corporation (incorporated in Delaware), part of a block of 1,970 shares which had been held by E. E. Smith & Company, a small unlisted dealer in New York. The court below found that Lynch had effected the sale by misrepresentation of material facts, and further found that the defendants had not sustained the burden of proof that Lynch did not know, nor in the exercise of reasonable care could have known, of the untruth of the misrepresentations. These findings are amply sustained by the testimony and indeed are not assailed by appel-

[1] "Sec. 2 [§ 77b]. When used in this title [subchapter], unless the context otherwise requires * * *

"(3) The term 'sale', 'sell', 'offer to sell', or 'offer for sale' shall include every contract of sale or disposition of, attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value; * * *

"(12) The term 'dealer' means any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person. * * *

"Sec. 4 [§ 77d]. The provisions of section 5 [77e] shall not apply to any of the following transactions:

"(1) Transactions by any person other than an issuer, underwriter, or dealer; * * *

"(2) Brokers' transactions, executed upon customers' orders on any exchange or in the open or counter market, but not the solicitation of such orders. * * *

"Sec. 5 [§ 77e]. (a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

"(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell or offer to buy such security through the use or medium of any prospectus or otherwise; * * *

"Sec. 12 [§ 77l]. Any person who—

"(1) sells a security in violation of section 5 [77e], or

"(2) sells a security (whether or not exempted by the provisions of section 3 [77c], other than paragraph (2) of subsection (a) thereof), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." 15 U.S.C.A. §§ 77b(3, 12), 77d, 77e(a)(1), 77l.

lants. The stock was actually without substantial value at any time. When Murphy learned the facts, he tendered back the securities to Rhoades & Company. Upon the refusal of the latter to take them back, Murphy sold the securities at a loss, and brought the present action. He has recovered a judgment for the amount he paid for the stock, with interest, less the amount realized upon the subsequent sale, with interest.

At the trial the plaintiff sought to prove that Rhoades & Company had acted as principal in the transaction; that Rhoades & Company on its own account had bought from E. E. Smith & Company the block of 1,970 shares of South American Utilities common a day or two before Lynch sold 1,700 of these shares to the plaintiff. Murphy testified that he had never heard of E. E. Smith & Company prior to his purchase of the securities. On the other hand Lynch, who was the main witness for the defendants, offered quite a different version. He testified on direct examination, as follows:

"Q. Now will you relate what your conversation was with Mr. Murphy on the first of March? A. It was after four o'clock, March 1st, that E. E. Smith & Company called me and said he had a block of 1970 shares of South American Utilities common. He wanted to know if—

"Q. Who is he? A. E. E. Smith.

"Q. E. E. Smith was E. E. Smith and Company? A. Yes. He wanted to know if I could find a buyer for the stock. I told him I had one possibility and to hold on the line until I talked with him. I called Mr. Murphy through our Portland wire and told Mr. Murphy about this block of South American Utilities common—

"Q. Just a minute. What block did Mr. Smith speak of to you? A. A block of 1970 shares of stock.

"Q. And did you mention the number of shares to Murphy? A. I did, sir.

"Q. All right. What else did you say? A. I told Mr. Murphy that Mr. Smith had this block of stock and wanted to know if he was interested in the stock. I quoted the market to Mr. Murphy, 4-1/4 to 4-3/4. Mr. Murphy wanted to know if it possibly could be bought cheaper. I said I would be glad to try. He gave me a bid for 1700 shares of stock at 4-1/2. Before I had actually purchased that stock from Mr.

Smith on the wire I told Mr. Murphy I had a long position in the stock which I wasn't going to sell and if I was going to buy this block of stock for Mr. Murphy I would act as agent in the transaction. He asked me what commission I would charge and I said I would charge a fair commission. We agreed on four cents a share—"

The District Court did not find it necessary to resolve the conflicting versions. It found, upon sufficient evidence, that the stock was "sold to the plaintiff by the defendants, acting either as brokers or owners". Though the evidence did not satisfy the court that Rhoades & Company acted as principals, it concluded that this was immaterial since "Section 12 of the Securities Act of 1933 applies to brokers when selling securities owned by other persons". The court found, as clearly warranted by the evidence, that Rhoades & Company, whether acting as brokers or owners, "solicited from the plaintiff an offer to buy the stock mentioned, and as a result of Lynch's solicitations and representations, the plaintiff bought the stock, paying the price named and a brokerage commission of four cents a share". This, the court thought, brought Rhoades & Company within the meaning of § 12(2) as a "person who sells a security", in view of the broad definition of "sell" in § 2(3) of the Act, which includes within the meaning of the word the "solicitation of an offer to buy". If Rhoades & Company, though not selling its own property, is a "person who sells a security" then it follows that Murphy is "the person purchasing such security from him" within the meaning of the corresponding phrase in § 12(2).

We agree with the court below that § 12(2) imposes a liability for misrepresentations not only upon principals, but also upon brokers when selling securities owned by other persons. This is not a strained interpretation of the statute, for a selling agent in common parlance would describe himself as a "person who sells", though title passes from his principal, not from him. This broader interpretation of § 12 (2) is warranted by the definition of "sell" in § 2(3) and is also supported by comparison with other sections of the statute. If the security in question had been a security required by law to be registered, but as to which no registration statement was in effect, Rhoades & Company under the facts of the present case would certainly have

been guilty of selling a security in violation of § 5(a) (1), and would not have come within the exemption provided in § 4(2). As a person who "sells a security in violation of section 5", Rhoades & Company would have been under a civil liability to Murphy under § 12(1). But the phrase "any person who sells a security" occurs both in § 12(1) and in § 12(2), and would seem to mean the same thing in both subsections, one of which deals with selling an unregistered security and the other of which deals with selling a security by means of misrepresentation of material facts.

It is argued that the remedy provided in § 12(2) is basically rescission, which contemplates a restoration of the status quo as between the principals to the transaction; and that Congress could hardly have intended to give this remedy to the buyer as against an agent of the seller. But the section does not use the word "rescission" nor indicate that the remedy provided is limited to rescission in the narrower sense as between the principals to the transaction. The remedy provided can be applied without difficulty to an agent of a vendor; the agent, by misrepresentations having effected a sale, is required to take over the securities from the defrauded buyer and to restore to the latter the price he paid. Even apart from statute this remedy of "rescission" in its wider sense, against the agent of a vendor, is not unknown. See Peterson v. McManus, 187 Iowa 522, 545, 172 N.W. 460 ff.; 3 Neb.L. Bull. 436, note.

At one point in its opinion the court below makes a statement of law which is broader than necessary to support the judgment rendered. It says [30 F.Supp. 466, 469]:

"Whether the seller, being a broker, himself owns the security, or whether he is acting as the agent for the owner, or for the purchaser, or for both, is immaterial. If, in the course of an attempt to dispose of, or solicitation of an offer to buy a security, he makes false statements under circumstances referred to in section 12, the purchaser is given a right of action to recover any damages he has suffered on account of the false representations."

We need not decide whether § 12(2) applies to the case of a broker acting solely for a purchaser, where the broker makes misrepresentations in the course of soliciting from the purchaser an order to buy. Even if the version of the defendants' witness Lynch is accepted, Rhoades & Company was acting either as agent for the seller or in a dual capacity as agent for both parties, in either of which cases § 12(2) is applicable. See Douglas & Bates, The Federal Securities Act of 1933, 43 Yale L. J. 171, 206, 207.

The plaintiff's declaration contained a count for deceit at common law. The court below held that recovery could not be allowed on this count because the plaintiff had failed to exercise reasonable care to ascertain the falsity of the representations. In view of our conclusion that the judgment for the plaintiff may be sustained under the statute, we do not consider the correctness of the trial court's ruling on the common law count.

The judgment of the District Court is affirmed, with costs to the appellee.

McLELLAN, District Judge (dissenting).

While I agree that within the meaning of the Securities Act (the material portions whereof appear in the majority opinion) one who sells as agent is a "seller" and subject to the statutory liabilities of a seller, I cannot concur in the result here reached. There was abundant evidence, which would have justified, if it did not require, a finding that the defendant acted not as agent for the seller but as agent for the plaintiff who was the buyer. The trial judge, after instructing himself that "whether the seller, being a broker, himself owns the security, or whether he is acting as the agent for the owner, or for the purchaser, or for both, is immaterial" found for the plaintiff upon the theory that the defendant was a "seller". To me, it seems, that one who acts solely as agent for the purchaser cannot be regarded as a seller and that the liability of such an agent for misrepresentations rests upon common-law principles, not upon the Securities Act which relates to misrepresentations by a seller.

The trial judge having proceeded upon a contrary view, I think justice requires that the judgment of the District Court be set aside and a new trial ordered.