**William G. WALL and Doris I. Wall, Plaintiffs,**

v.

**A. J. WAGNER, real name unknown, Pay Rock Oil, Inc., a Corporation of Eureka, Kansas, and C. C. Whittaker, real name unknown, Defendants.**

**Civ. No. 82–53.**

United States District Court
D. Nebraska, Omaha Division.

Dec. 6, 1954.

Deutsch & Jewell, Frederick M. Deutsch, Norfolk, Neb., for plaintiffs.

Fred N. Hellner, Omaha, Neb., for defendant A. J. Wagner.

Van Pelt, Marti & O'Gara, Warren K. Dalton, Lincoln, Neb., for defendants C. C. Whittaker and Pay Rock Oil, Inc.

DONOHOE, Chief Judge.

■■ This action was instituted by plaintiffs, William G. Wall and Doris I. Wall, to recover $9,557.96, plus interest, from defendants, A. J. Wagner, C. C. Whittaker and Pay Rock Oil, Inc. Since the basis of plaintiffs' claim is that certain undivided interests in oil and gas leases were sold to them by defendants without complying with the Securities Act of 1933, 15 U.S.C.A. § 77a et seq., this court has jurisdiction. 15 U.S.C.A. § 77v. Venue is properly laid in this District because a "sale" as that term is used in the Securities Act took place in Nebraska. 15 U.S.C.A. § 77v.

After careful consideration of the properly admissible evidence presented at the trial, the court makes the following special

Findings of Fact:

The defendant, Pay Rock Oil Company, of which C. C. Whittaker was, during the period material to this case, president and a substantial stockholder, employed the other defendant, A. J. Wagner, as its representative, to sell interests in oil leases on a commission basis.

In the early part of July, 1952, defendant A. J. Wagner contacted plaintiffs at Norfolk, Nebraska, and induced them to go with him to the State of Kansas for the purpose of inspecting certain oil fields which were the subject of oil lease interests that Wagner was selling.

On July 15, 1952, plaintiffs drove from Norfolk, Nebraska, to Lincoln, Nebraska, where they met Wagner and traveled with him in his automobile to Madison, Kansas. Here they were introduced by Wagner to the defendant C. C. Whittaker. On this same day Wagner and Whittaker took plaintiffs to different tracts of land, showing them oil wells with pumping station equipment in operation, and stating the amount of production of such wells, their owners and similar facts. That evening the parties returned to Eureka, Kansas, where plaintiffs were provided by defendants with a room at the Lyndon Hotel, and were guests of the defendants for dinner that evening and breakfast the next morning.

Sometime before noon the next day the parties went to the office of defendant, Pay Rock Oil, Inc., in Eureka, Kansas, and after some discussion relating to property described as Freeburg "A" plaintiffs signed an agreement authorizing Wagner to procure on their behalf a working interest in Freeburg "A". The agreement provided that plaintiffs would pay $3,000 plus an additional $1,500 for drilling expenses if oil were found on the leasehold. The plaintiffs also acquired an option to purchase a similar interest in Freeburg "B", another oil lease. In connection with this transaction, plaintiffs made out and delivered a check in the sum of $3,000 to Whittaker, as payee. Whittaker endorsed the check to Pay Rock Oil, Inc., the ultimate recipient of the proceeds. Wagner signed the before-mentioned agreement as "Representative".

Plaintiffs returned to their home in Norfolk, Nebraska, without a copy of the agreement. On July 30, 1952, plain-

tiffs wrote to the Secretary of Pay Rock Oil Company at Eureka, Kansas, for their copy of the agreement and it was forwarded to them promptly. Shortly thereafter a document entitled "Development Contract of Oil and Gas Lease" was sent by mail from Pay Rock Oil, Inc., at Eureka, Kansas, to plaintiffs at Norfolk, Nebraska. This instrument which covered the Freeburg "A" property, among other things provided:

"In event production be secured in the above well, Operator shall turnkey the completion of the above well to and including necessary tankage for the sum of $1500.00 for ⅟₁₆th dollars, the same to be paid pro rata in advance by the owners as their interests appear.

"The second and succeeding wells drilled on the above property shall be turnkeyed by the Operator for a lump sum of $900 for ⅟₁₆th dollars to test the known producing horizon of this area".

This contract, which also included a grant of an interest in the oil rights in the Freeburg "A" property, was executed and acknowledged by A. J. Wagner in Greenwood County, Kansas.

On August 12, 1952, the following letter was sent to plaintiffs:

"To All Owners of the Freeburg 'A' Lease:
"Dear Friends:
"The bit reached the oil late yesterday afternoon in the Freeburg 'A' No. 1, and last night we ran and cemented the pipe. We will now push on with the completion of the well in regular manner.
"Please send your pro rata part of equipment costs on a turnkey basis. They are now due as per the enclosed statement.
      "Very sincerely yours,
      "Pay Rock Oil, Inc.
      "C. C. Whittaker, Pres."

Enclosed with this letter was a statement for $1,500 for "equipment and completion costs". On August 27, 1952, plaintiffs remitted a check in that amount. A similar statement for $900 was mailed to plaintiffs on September 5, 1952, and they remitted payment October 8, 1952.

About September 1, 1952, defendant Wagner urged plaintiffs at Norfolk, Nebraska, to exercise their option on the land described as Freeburg "B"; and plaintiffs sent two checks, each in the sum of $1,500, one dated September 5, and the other September 15, 1952, to Pay Rock Oil, Inc. On September 23, 1952, Pay Rock Oil, Inc., sent to plaintiffs a document entitled "Development Contract of Oil and Gas Lease" covering the property described as Freeburg "B". This document was also executed and acknowledged by A. J. Wagner at Greenwood County, Kansas. This agreement provided for the payment of drilling expenses in the sum of $1,500 and $900 under the same terms and conditions as contained in the agreement relating to Freeburg "A".

About September 22, 1952, Pay Rock Oil, Inc., sent to plaintiffs a statement for $1,500 for "Completion and Equipment—Freeburg 'B' No. 1". Plaintiffs remitted payment for this statement on September 25, 1952.

From December, 1952, through April, 1953, plaintiffs received $342.04 in distributions from Pay Rock Oil, Inc., in connection with the Freeburg "A" and Freeburg "B" contracts.

Pay Rock Oil, Inc., was the actual owner of the oil rights in the property described as Freeburg "A" and Freeburg "B" which were sold by A. J. Wagner to plaintiffs. No registration certificate relating to the interest in Freeburg "A" and Freeburg "B" which were sold to plaintiffs was filed, prior to June 19, 1953, with the Federal Securities Commission.

### Discussion

■■ a) *Violation of the Securities Act.* The fractional undivided interests in the oil rights sold to plaintiffs in this case are "securities" within the meaning of that term as defined in the Securities Act of 1933. 15 U.S.C.A. § 77b(1). Unless a registration certificate is in effect as to such securities, it is unlawful for

any person, directly or indirectly, to carry or cause to be carried through the mails any such security for the purpose of sale or for delivery after sale. 15 U. S.C.A. § 77e(a) (2). Since it is admitted that the "Development Contracts of Oil and Gas Lease" relating to both the Freeburg "A" and Freeburg "B" properties were transmitted to the plaintiffs by mail, a violation of the Securities Act is clearly established.

■ b) *Damages.* Any person who sells a security in the unlawful manner mentioned above, i. e. in violation of 15 U.S.C.A. § 77e, is liable to the person purchasing such security from him, who may sue at law or in equity in any court of competent jurisdiction to recover the *consideration paid* with interest, less the amount of any income received, upon the tender of such security. 15 U.S.C.A. § 77*l.*

■ In this case the court is inclined to the view that the *consideration paid* for the securities includes not only the $6,000 in initial payments but also the $3,900 in "equipment and completion" costs which the plaintiffs were required by the terms of the contract to pay for their undivided interests in the oil rights.[1] Since the plaintiffs have received $342.04 in distributions, they are entitled to recover only $9,557.96 in this action. 15 U.S.C.A. § 77*l.*

■ c) *Persons Liable.* Since the Act provides that the "seller" is liable the question arises in this case as to whether the term "seller" includes only the principal, Pay Rock Oil, Inc., or also its agents, Whittaker and Wagner. Although the court was unable to discover a case precisely in point, it is disposed to hold both principal and agents liable for the reasons stated in Cady v. Murphy, 1 Cir., 1940, 113 F.2d 988, 991, in which Judge Magruder said this:

"It is argued that the remedy provided in § 12(2) is basically rescission, which contemplates a restoration of the status quo as between the principals to the transaction; and that Congress could hardly have intended to give this remedy to the buyer as against an agent of the seller. But the section does not use the word 'rescission' nor indicate that the remedy provided is limited to rescission in the narrower sense as between the principals to the transaction. The remedy provided can be applied without difficulty to an agent of a vendor; the agent, by misrepresentations having effected a sale, is required to take over the securities from the defrauded buyer and to restore to the latter the price he paid. Even apart from statute this remedy of 'rescission' in its wider sense, against the agent of a vendor, is not unknown. See Peterson v. McManus, 187 Iowa 522, 545, 172 N.W. 460 ff.; 3 Neb.L.Bull. 436, note."

Since the court finds that Wagner was an agent of Pay Rock Oil, Inc., it is unnecessary to consider his contention that he is not an "underwriter" within the meaning of 77b, Title 15 U.S.C.A.

■ d) *Jurisdiction and Venue.* An action such as this under the Securities Act of 1933 may be brought in the district where the *sale* took place if the defendant participated therein. The court finds that the "sale" in this case took place in Nebraska within the meaning of that term as used in the Act. The term "sale", "sell", " 'offer to sell'," *or* " 'offer for sale'," unless the context otherwise requires, includes a solicitation of an offer to buy a security for value. 15 U.S. C.A. § 77b(3). Such a solicitation was made in Nebraska by Wagner, the Agent of Pay Rock Oil, Inc.

Counsel for plaintiffs shall prepare and submit for approval the appropriate judgment to be entered in this case.

---

1. Plaintiffs by this action relinquish all claims to the drilling equipment.