**C. C. WHITTAKER, Sr., and Pay Rock Oil, Inc., Appellants,**

v.

**William G. WALL and Doris I. Wall and A. J. Wagner, Real Name Unknown, Appellees.**

**No. 15293.**

United States Court of Appeals Eighth Circuit.

Nov. 8, 1955.

Warren K. Dalton, Lincoln, Neb. (Robert Van Pelt and Van Pelt, Marti & O'Gara, Lincoln, Neb., with him on the brief), for appellants.

Frederick M. Deutsch, Norfolk, Neb. (Deutsch & Jewell, Norfolk, Neb., with him on the brief), for appellees Wall.

William H. Timbers, Gen. Counsel, Alexander Cohen, Sp. Counsel, Elizabeth B. A. Rogers, Atty., Securities and Exchange Commission, Washington, D. C., filed brief as amicus curiae.

Before WOODROUGH, JOHNSEN and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

Appellees Wall commenced this action against A. J. Wagner, Pay Rock Oil, Inc. and C. C. Whittaker, Sr., under the Securities Act of 1933, 15 U.S.C.A. § 77a

et seq., to recover the consideration paid by them for unregistered fractional interests in oil and gas leases. From an adverse judgment C. C. Whittaker and Pay Rock Oil, Inc., appeal.

Pay Rock Oil, Inc., a Delaware corporation, whose principal place of business was Eureka, Kansas, and of which C. C. Whittaker was president and substantial stockholder, employed A. J. Wagner, a resident of Nebraska, as "representative" to sell oil and gas leases on a commission basis. In July, 1952, Wagner told appellees Wall in Nebraska of certain likely oil prospects and persuaded the Walls to inspect the holdings in Kansas with him. As a result, the Walls accompanied Wagner from Nebraska to Kansas, where they were introduced to C. C. Whittaker and taken on a tour of the drilling sites. On the following day, at the offices of Pay Rock Oil, Inc., in Kansas, the Walls signed an agreement authorizing Wagner to procure a ¾₆th working interest in certain property known as the Freeburg "A" tract for $3,000.00 plus $1,500.00 if oil was found in commercial quantities. The $1,500.00 was stipulated to be for equipment and drilling expenses. Appellees also acquired an option to purchase a similar lease on the Freeburg "B" tract under the same terms. Provision was made that another $900.00 would be due in each case if a second well was drilled.

After conclusion of the negotiations, Wagner signed the agreement as "representative". Appellees then gave Whittaker a check for $3,000.00 and returned to Nebraska. About two weeks later appellees wrote to the secretary of Pay Rock, asking for their copy of the agreement and it was forwarded promptly. Shortly thereafter another document, entitled "Development Contract of Oil and Gas Lease", was sent by mail from the company in Kansas to the Walls in Nebraska. This development contract was executed and acknowledged by Wagner in Kansas.

On August 12, 1952, after the Freeburg "A" well struck oil, appellees received a statement by mail, from Kansas to Nebraska, requesting $1,500.00 for equipment and drilling expenses, and on September 5, 1952, they received a similar bill requesting $900.00 for a second well on the "A" tract. Both amounts were remitted by check. On September 1, 1952, in Nebraska, Wagner urged the Walls, by letter and telephone, to exercise the option on the "B" tract, and they did so, paying $3,000.00 then and $1,500.-00 when the well struck oil. Such payments were made by mailing checks in Nebraska addressed to Pay Rock Oil, Inc., in Kansas. From December, 1952, through April, 1953, appellees received $342.04 in royalty distributions from Pay Rock in connection with the Freeburg "A" and "B" tracts. No registration certificate for either lease interest was filed with the Federal Securities Commission by Pay Rock or its officers.

Appellees, presumably concluding that they had made a bad investment, filed suit in the United States District Court of Nebraska, seeking return of the consideration paid. They relied on the provisions of 15 U.S.C.A. §§ 77e and 77l. These subsections state summarily that unless a registration certificate is in effect as to a security, it is unlawful to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell or offer to buy such security, or to carry or cause to be carried any such security for the purpose of sale or for delivery after sale. Any person who sells a security in violation of such provisions shall be liable to the purchaser, who may sue in any court of competent jurisdiction for the consideration paid plus interest, less any income received.

Appellants admitted sale of the securities in Kansas, but contended that the Nebraska court had no jurisdiction because there was no "sale" as contemplated by the statute in the District of Nebraska.

The trial court found, Wall v. Wagner, D.C., 125 F.Supp. 854, that it had jurisdiction and gave judgment for the plaintiffs for the entire amounts of the consideration paid, including the two $1,500.-

00 payments and the $900.00 payment, less. $342.04 royalty distributions. The court also gave plaintiffs a lien on the involved securities, property and trust funds for payment of the judgment, and gave Wagner a similar lien in the event that he would pay any part of or all of the judgment. The court retained jurisdiction for the purpose of disposal of the properties upon payment of the judgment.

The questions presented by this appeal involve the jurisdictional issue and the propriety of the relief afforded.

█ █ Appellants contend, with reference to the question of jurisdiction, that no sale of securities took place in the State or District of Nebraska. 15 U.S.C.A. § 77v at the time in question provided in part:

"Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, *or in the district where the sale took place, if the defendant participated therein,* and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found." (The Securities Act has since been amended. Act of August 10, 1954, 68 Stat. 684.) (Emphasis supplied.)

As a basis for jurisdiction under the act, the trial court found that there had been a "sale" in Nebraska. D.C., 125 F.Supp. 854, 858:

"d) *Jurisdiction and Venue.* An action such as this under the Securities Act of 1933 may be brought in the district where the sale took place if the defendant participated therein. The court finds that the 'sale' in this case took place in Nebraska within the meaning of that term as used in the Act. The term 'sale', 'sell', ' "offer to sell",' or ' "offer for sale",' unless the context otherwise requires, includes a solicitation of an offer to buy a security for value. 15 U.S.C.A. § 77b(3). Such a solici-

tation was made in Nebraska by Wagner, the Agent of Pay Rock Oil, Inc."

Section 77b (3), insofar as it is applicable herein, provides:

"The term 'sale', 'sell', 'offer to sell', or 'offer for sale' shall include every contract of sale or disposition of, attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value; except that such terms shall not include preliminary negotiations or agreements between an issuer and any underwriter."

Appellants argue that this definition is out of context and does not apply to Section 77v because the latter section contemplates only a suit for damages as a consequence of a sale, there being no accrual of damages from a solicitation or an offer to dispose of securities. There would, instead, be a criminal prosecution or suit for an injunction handled by the Securities and Exchange Commission in accordance with Section 77t. Thus, it is concluded by appellants, Section 77v deals only with private, consummated sales and they claim there was no such sale in Nebraska.

Whether the statutory periphery of the court's jurisdiction is to be extended liberally by utilizing the Section 77b(3) definition as the meaning of "sale" or whether it shall be limited by the construction proffered by appellants is a query which may be decided by a perusal of the various purposes sought to be accomplished by the Securities Act. In the case of Wilko v. Swan, 1953, 346 U.S. 427, 430, 74 S.Ct. 182, 184, 98 L.Ed. 168, the Supreme Court, through Mr. Justice Reed, used this significant language:

"In response to a Presidential message urging that there be added to the ancient rule of *caveat emptor* the further doctrine of 'let the seller also beware,' Congress passed the Securities Act of 1933. Designed to protect investors, the Act requires issuers, underwriters, and dealers to make full and fair disclosure of the

character of securities sold in interstate and foreign commerce and to prevent fraud in their sale. * * * The Act's special right is enforceable in any court of competent jurisdiction—federal or state—and removal from a state court is prohibited. If suit be brought in a federal court, *the purchaser has a wide choice of venue, the privilege of nation-wide service of process* and the jurisdictional $3,000 requirement of diversity cases is inapplicable." (Emphasis supplied.)

It is thus apparent that from the inception of the statute the accent has been on liberality. Securities & Exchange Commission v. C. M. Joiner Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L. Ed. 88; Blackwell v. Bentsen, 5 Cir., 1953, 203 F.2d 690. To restrict jurisdiction here to the situs of the consummated sale would run contrary to this liberal tenor and submit the jurisdictional situs to the vagaries of conflicts of laws issues as to where the sale took place. We therefore hold that it was the intent of Congress to permit an action to be brought in any jurisdiction wherein a "sale", as defined in Section 77b(3), took place. See Securities & Exchange Commission v. Wimer, D.C.1948, 75 F.Supp. 955, 962. As pointed out by the Securities & Exchange Commission in its brief as amicus curiae, this argument finds additional force in the 1954 amendments to the Securities Act and the committee reports. In this amendment, the words "offer" and "sale" were redefined for a purpose not pertinent here, but included separately the same provisions as the prior definition of "sale". The two terms, "offer" and "sale", were both used in the redraft of Section 77v so as to (according to committee reports) "make clear that the civil and penal liabilities and sanctions imposed by the statute shall remain unchanged, notwithstanding the changes made elsewhere in the statute". See Sen.Rep.No. 1036, 83d Cong., 2nd Sess. (1954) and H.R.Rep.No.1542, 83d Cong., 2nd Sess. (1954).

Appellants argue that even if a broad meaning were given the term "sale", nothing was done in Nebraska prior to the execution of the contract in Kansas which could be considered a sale, offer or solicitation of an offer. Obviously appellants do not consider the importuning of the Walls by Wagner in Nebraska, concerning either the "A" or "B" leases, as being solicitations. They maintain that he was merely making suggestions concerning securities. This, to us, is untenable, for if appellees had offered to purchase the securities immediately, the necessary adjuncts would undoubtedly have been taken care of. The trip was a mere cautious fortuity.

Appellants likewise vigorously deny that Wagner was a representative of Pay Rock Oil or that he had authority to sell the lease interests. However, the affidavit of Wagner, his signature on the procurement agreement as "representative" and his execution of the development contracts deny the efficacy of this contention. The trial court, on substantial evidence, found specifically that Wagner was an agent of Pay Rock Oil, Inc. We conclude, therefore, that Wagner, as agent, solicited the Walls in Nebraska, that such solicitations were "sales" for venue purposes, and that this action was properly brought in the District of Nebraska.

Having concluded that there was a "jurisdictional sale" resulting from the solicitations in Nebraska, it is unnecessary to consider appellants' argument that mailing of securities over state lines is not a "sale" within the meaning of the Securities Act for the purpose of establishing jurisdiction.

To involve the appellants, it is necessary, under § 77v(a), that they participated in the "sale" in Nebraska. Since it has been determined that Wagner was an agent of Pay Rock Oil, Inc., that relationship would involve the corporation. As to C. C. Whittaker, it is undisputed that he is, or was, president and holder of a large portion of the stock of Pay Rock Oil. His actions in Kansas and his participation in the consummation of

the sale there are part and parcel of the entire transaction from solicitation to suit.

In Schillner v. H. Vaughan Clarke & Co., 2 Cir., 1943, 134 F.2d 875, at page 879, it is said, paraphrasing Section 77o:

" * * * every person who controls *through stock ownership or otherwise* any person liable under section 12 (Section 77l) is also made liable 'jointly and severally with and to the same extent as such controlled person.' The convenience of establishing such joint and several liability in a single suit is obvious." (Emphasis supplied.)

We find no basis in logic or practicality for appellants' suggestion that neither Pay Rock Oil or its president controlled Wagner in his sales of the leases in question. Wagner is implicated by his agency relationship with Pay Rock Oil and C. C. Whittaker is liable because of his ostensible control. Miller v. Hano, D.C., 8 F.R.D. 67.

Appellants' next contention is that appellees are entitled to recover only the amounts paid for the "securities", not the expenditure for equipment or second well payments. They maintain that this is not the usual action in equity for rescission, but is an action under a specific statute which grants a specific right of recovery and that the right of recovery is limited to the "consideration paid" for the security purchased. Appellants adjudge the distended payments to be outside the definition of "security" and accordingly not a part of the consideration paid. We do not agree. The securities themselves created the secondary obligations when oil was reached. Also these payments were made for the purpose of rendering more valuable the primary securities. It would be a perversion of the statute to allow remittances made in conjunction with a void and unlawful security to be exempt from restitution, and would permit unjust enrichment under the guise of statutory definition.

The final contentions of the appellants deal with the propriety of the court's action in awarding appellees a lien on the securities, trust funds and other property to insure payment of the judgment, and with the granting of a similar lien to Wagner in the event he should pay any part of or all of the judgment. Appellees' complaint, it is argued, prays for judgment under the statute, not a specific lien or a determination that the funds paid or property purchased were held in trust. As authority for this position, appellants rely heavily upon Sylvan Beach, Inc., v. Koch, 8 Cir., 1944, 140 F.2d 852, 861.

In that case, this court set aside relief granted a trustee against various defendants who were not within the jurisdiction of the court and which relief was violative of due process. In so doing, this court said, 140 F.2d at page 861, referring to the trial court:

"It has no jurisdiction to hear and determine controversies between adverse third parties which are not strictly and properly part of the proceedings in bankruptcy. (Citing cases.)"

In the instant case, all parties are in court, all material issues are pleaded and the disputed relief is merely the exercise of the equity powers of the court in enforcing its judgment. Such extension of relief beyond that asked for in the pleadings has been approved by many cases, Gins v. Mauser Plumbing Supply Co., 2 Cir., 1945, 148 F.2d 974; Liquid Carbonic Corp. v. Goodyear Tire & Rubber Co., D.C.Ohio 1941, 38 F.Supp. 520; Bemis Bro. Bag Co. v. United States, 1933, 289 U.S. 28, 53 S.Ct. 454, 77 L.Ed. 1011; Ring v. Spina, 2 Cir., 1945, 148 F. 2d 647; and Rule 54(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which provides as follows:

"Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

Resultantly, it is necessary only for the facts and issues of the case to support

the judgment. Garland v. Garland, 10 Cir., 1947, 165 F.2d 131; Schoonover v. Schoonover, 10 Cir., 1949, 172 F.2d 526; Perkins v. Remillard, D.C.1949, 84 F. Supp. 224. The violation of the statute here observed is sufficient to warrant the judgment awarded and we are convinced that the trial court, through specific liens, used a judicious means of enforcing it. Likewise, we are convinced that the trial court correctly impressed upon the funds paid for drilling expenses an equitable trust for the benefit of the appellees. Blazer v. Black, 10 Cir., 1952, 196 F.2d 139.

Pursuant to the holding of Cady v. Murphy, 1 Cir., 1940, 113 F.2d 988, the trial court held both Whittaker and Wagner liable as agents, and then gave Wagner a lien on the properties in the event that he should pay any part of or all of it. There is, to us, no incongruity in thus enforcing the instant judgment. Wagner is liable as agent and as agent may recover from his principal. Restatement of Agency § 438. The court may use suitable means to insure the reimbursement.

Affirmed.