**76**

CRESWELL–KEITH, INC., An Arkansas Corporation, Trustee for Creswell-Keith Mining Trust, Appellant,

v.

B. F. WILLINGHAM, W. S. Bradham (Also Known as W. S. (Pete) Bradham), Mildred Willingham, and Floy Bradham, Appellees.

No. 16022.

United States Court of Appeals Eighth Circuit.

Feb. 27, 1959.

McMillan & McMillan, Arkadelphia, Ark., and Brown & Compton, El Dorado, Ark., for appellees.

Thomas G. Meeker, General Counsel, Joseph B. Levin, Asst. General Counsel, and Alger B. Chapman, Jr., Attorney, Washington, D. C., for Securities and Exchange Commission, amicus curiæ.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTER-HOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Plaintiff appeals from final judgment dismissing for lack of jurisdiction its complaint, invoking sections 12(2) and 17(a) of the Securities Act of 1933, as amended,[1] 15 U.S.C.A. §§ 77$l$(2) and 77q (a) (2), requesting rescission of allegedly fraudulent sales of securities. The complaint in substance alleged that plaintiff was induced to purchase undivided fractional interests in oil leases because of oral misrepresentations knowingly made by defendants to plaintiff's president, and asserted that plaintiff is entitled to rescind the purchases and recover the consideration paid. Defendants filed motions to dismiss for lack of jurisdiction.[2] If the action here involved falls within the provisions of section 12(2), jurisdiction is conferred upon the federal court by section 22, 15 U.S.C.A. § 77v.

The trial court dismissed the complaint for want of jurisdiction. The facts of this case and the reasoning upon which the trial court based the dismissal are fully set out in the trial court's opinion, D.C., 160 F.Supp. 735. The court held that it had no jurisdiction to grant the plaintiff the relief prayed for under sec-

N. L. Schoenfeld, Hot Springs, Ark., for appellant.

1. The parties in their briefs cited the applicable portions of the Securities Act of 1933, as amended, by the section numbers as used in the original Act, and to avoid confusion we will follow the same method of citation. Section references in the opinion, unless otherwise indicated, are to the section numbers of the Securities Act of 1933.

2. The motion filed by the defendants Bradham also raised the issue that the inter-

ests sold were not securities. The trial court determined that the interests sold were securities, pointing out that the definition of "security" found in 15 U.S.C.A. § 77b includes any fractional undivided interest in oil, gas, or mineral leases. Supporting authorities are cited. No contention is made in defendants' brief on this appeal that the interests sold are not securities and hence such issue is not before us for consideration.

tion 12(2) since the complaint did not allege either (1) that the false representations were communicated by mail or interstate commerce, or (2) that the securities were delivered by mail or interstate commerce. It reasonably appears from the complaint that all alleged false representations were made orally face to face in Arkansas, and that the securities were delivered in Arkansas. Plaintiff pleaded that the mails were used to complete the payment of the consideration for the sales of the securities. The issue is whether such use of the mails brings the securities sales within the provisions of section 12(2).

Both plaintiff and defendants have filed briefs. The Securities and Exchange Commission has filed a brief amicus curiae, asserting its position that jurisdiction exists under the facts of this case. We regret that we were not given the benefit of oral argument to aid us in the solution of the difficult legal problems presented by this appeal.

■ The plaintiff and the Securities and Exchange Commission contend that section 12(2) does not require that the mails or an instrumentality of interstate commerce be used to transmit the misrepresentation or the securities involved. They contend that the mails and interstate commerce provision is inserted in the Act only for jurisdictional purposes, that Congress in the Securities Act intended to assert its full powers with reference to fraudulent sales of securities, and that any use of the mails or interstate commerce at any point in the transaction makes section 12(2) operative. The Securities and Exchange Commission in its brief thus states the interpretation problem and its solution thereof:

"1. The first question involved is the proper construction of the first three clauses or phrases of Section 12(2) which, for purposes of this discussion, are separated in the excerpt set forth below:

"Any person who * * * offers or sells a security * * *,

"by the use of any means or instruments of transportation or communication in interstate commerce or of the mails,

"by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading * * *

"shall be liable to the person purchasing such security from him * * *.

"As a matter of grammar, both clause two ('by the use of', etc.) and clause three ('by means of a prospectus', etc.) independently modify 'offers or sells a security.' Thus, the third clause modifies solely 'offers or sells a security' and is not merely an extension of the second clause. This is warranted by the comma between clauses two and three, by the absence of qualifying language, and by the commencement of both clauses two and three with the preposition 'by' which indicates that each was intended independently to modify the initial verbs.

"Thus viewed on the basis of the plain language of the section, in a sale of securities in which the mails or facilities of interstate commerce are used, the purchaser has a right of recovery against the seller for a misrepresentation however made, including one made orally 'face to face.' Furthermore, the statute does not prescribe how the mails or facilities of interstate commerce have to be used in the sale. Consequently, any use of the mails or interstate commerce in the offer or in the sale transaction suffices."

The substance of section 12(2) is set out in the foregoing quotation. The construction of the statute contended for is a permissible one.

It is quite true, as stated by the trial court, that there are no cases passing on

the precise problem here confronting us. Various courts, however, have had occasion to interpret section 12(2), and have rejected the contention that section 12(2) is available only in the event the misrepresentation was made by mail or by interstate commerce, the courts holding that the mailing of the securities or the transporting of them in interstate commerce is sufficient to make the sale subject to the provisions of section 12(2). See Blackwell v. Bentsen, 5 Cir., 203 F.2d 690; Schillner v. H. Vaughan Clarke & Co., 2 Cir., 134 F.2d 875; Moore v. Gorman, D.C.S.D.N.Y., 75 F.Supp. 453; Athas v. Day, D.C.Colo., 161 F.Supp. 916; Annotation, 50 A.L.R.2d 1228, 1235.

In the Schillner case, supra, the false representations were made face to face, but the security was mailed to the purchaser. This circumstance was held sufficient to give the court jurisdiction to rescind the sale pursuant to section 12(2). The court, in rejecting the argument that the statute requires the false representation to be made by the use of the mails or an instrumentality of interstate commerce states (at page 877 of 134 F.2d):

> " * * * The argument assumes that this section requires the false or misleading statement which gives rise to the liability to be transmitted by mail or by use of an interstate instrumentality of transportation or communication. We do not think that this is the inevitable, or even the most natural, meaning of the statutory language. Liability to repay the consideration received is imposed upon any person who 'sells a security * * * by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication' of the untrue or misleading character described in the section. To accept appellant's construction would render the phrase 'oral communication' of most limited application because the section would then reach only interstate

telephone calls or conversations where the parties might be talking across a state line. It would seem much more likely that Congress intended to make the statute applicable if one sells a security by use of the mails, even though the seller's untrue or misleading statement is communicated orally and intrastate. In the case at bar the contract of sale was concluded orally and the stock was paid for by the buyers without any use of the mails, but the mails were used for delivery of the stock certificate to the buyers. In our opinion such a transaction falls within both the letter and the purpose of the statute. Section 2(3) of the Act, 15 U.S.C.A. § 77b(3) provides that 'unless the context otherwise requires' the term 'sale' or 'sell' 'shall include every contract of sale or disposition of * * * a security or interest in a security, for value.' Delivery of the stock certificate pursuant to a contract of sale would seem to be a 'disposition of * * * a security' within this definition; consequently the seller who mails the certificate to the buyer 'sells a security * * * by the use * * * of the mails.' "

In Blackwell v. Bentsen, supra, the court, although finding that the sale-inducing representations were made orally face to face, found that it had jurisdiction under section 12(2) because the deeds and contracts consummating the transaction were transmitted by mail. The court considers and rejects contrary holdings, stating (at page 693 of 203 F.2d):

> " * * * This is a remedial statute. It should be liberally construed to accomplish the dominant legislative purpose in adopting it, which is to prevent the use of the mails, and other instrumentalities of interstate commerce, in the perpetration of investment frauds. * * * Here the sales were apparently by oral communication, but the transactions were consummated by the use of the mails, which in our opin-

ion brings the transaction within the statute. Delivery of the deeds and contracts is an integral part of the sale. * * * "

It is readily apparent that the courts deciding the Schillner and Blackwell cases have rejected the construction of the statute urged here by the defendants, the courts holding that the use of the mails in consummation of the sale by the delivery of the security brings the transaction within section 12(2), even though no mail or instrumentality of commerce was used to convey the false representation.

The defendants rely largely upon Kemper v. Lohnes, 7 Cir., 173 F.2d 44. While that case could be distinguished factually from the cases heretofore cited, the court in its opinion states that relief under section 12(2) can be available only where the false representations were transmitted by mail or an instrumentality of interstate commerce. Dicta to the same effect is found in Darwin v. Jess Hickey Oil Co., D.C.N.D.Texas, 153 F. Supp. 667, but the decision in the case turns upon the court's finding that the item sold was not a security.

■ The Securities and Exchange Commission brief points out that section 17(a) is a counterpart of section 12(2) in that it subjects the same type of fraud to Commission injunction or criminal proceedings. Section 17(a) provides that "It shall be unlawful for any person in the sale of any securities * * * by the use of the mails, directly or indirectly * * * to obtain money or property by means of any untrue statement of a material fact. * * * " The courts have uniformly held that this statute applies when the mails are used in furtherance of a fraudulent scheme, irrespective of whether the misrepresentations were transmitted by mail or in interstate commerce. Holmes v. United States, 8 Cir., 134 F.2d 125; Thomas v. United States, 9 Cir., 227 F.2d 667; Kelling v. United States, 10 Cir., 193 F.2d 299; Securities and Exchange Commission v. Timetrust, Inc., D.C.N.D.Cal., 28 F.Supp. 34.

■ While the language in section 17(a) is somewhat broader and clearer than that in section 12(2), it seems unlikely that Congress intended that acts subject to criminal liability under section 17(a) would not create civil liability under section 12(2). It is our best judgment that Congress inserted the mails and interstate commerce provision in section 12(2) merely for the purpose of establishing federal jurisdiction, and that Congress intended to assert its full constitutional power in granting civil relief from fraudulent transactions. This position is supported by the Schillner case, supra, 134 F.2d at page 878.

Section 12(2) deals with sales of securities. In section 2(3) the term "sell" or "sale" is defined to "include every contract of sale or disposition of * * * a security * * * for value." The term "sale" was doubtless intended to be used in the broad sense of the foregoing definition. The Schillner and Blackwell cases hold that the delivery of the security is part of the sale transaction. The payment of the consideration for the sale is as much a part of the sale as the delivery of the security.

■ Moreover, courts having occasion to interpret the Securities Act have generally held that the Act should be liberally construed to carry out the expressed legislative policy. In Securities and Exchange Commission v. C. M. Joiner Leasing Corp., 320 U.S. 344, 350–351, 64 S.Ct. 120, 123, 88 L.Ed. 88, the Court, in dealing with the problem of what constitutes a security, discusses the rules of strict and narrow statutory construction and then states:

"* * * However well these rules may serve at times to aid in deciphering legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular

cases the generally expressed legislative policy."

This court in Whittaker v. Wall, 8 Cir., 226 F.2d 868, 871, in considering another section of the Securities Act, after reviewing and citing cases, states:

"It is thus apparent that from the inception of the statute the accent has been on liberality. * * * "

In Wilko v. Swan, 346 U.S. 427, 430-431, 74 S.Ct. 182, 184, 98 L.Ed. 168, the Court, in speaking of the purpose of the Securities Act, says:

"In response to a Presidential message urging that there be added to the ancient rule of *caveat emptor* the further doctrine of 'let the seller also beware,' Congress passed the Securities Act of 1933. Designed to protect investors, the Act requires issuers, underwriters, and dealers to make full and fair disclosure of the character of securities sold in interstate and foreign commerce and to prevent fraud in their sale. * * * "

The preamble of the Securities Act of 1933, 48 Stat. 74, reads:

"To provide full and fair disclosure of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sale thereof, and for other purposes."

█ We believe that payment of the consideration for the sale of a security is as much a part of the sale as the delivery of the security. Accordingly, the sound reasoning of the Blackwell and Schillner cases applies to our factual situation, and supports the conclusion that a sale of securities induced by oral face to face fraudulent representations, which is completed by means of payment of the purchase price by mail, is protected by section 12(2).

█ We now look to the pleadings in the light of the statute as we have interpreted it. For the purpose of the motion to dismiss, we must assume that the facts well pleaded in the complaint are true. The complaint discloses that all parties to this suit are residents of Arkansas, that all of the alleged misrepresentations were oral and made face to face in Arkansas, and that the involved securities were delivered in Arkansas. Two sales of securities are pleaded. On September 6, 1956, plaintiff purchased from defendants one-eighth of seven-eighths working interest in the Newton Estate "A" Lease, including producing wells located thereon. On November 29, 1956, plaintiff purchased defendants' remaining interest in the Newton "A" Lease, and also other oil lease interests and certain personal property. There is doubt whether any false representations are alleged in connection with the first sale. The allegation that the royalty check arising out of the first sale was for one month's run, when in fact it covered a longer period, could not have induced the first sale, as the sale was necessarily completed before the check was issued. This is the specific fraud relied upon. There are, however, broad allegations of fraudulent representations at indefinite times, so for the purpose of this motion we will give the plaintiff the benefit of the doubt and assume that fraud has been alleged in connection with the first sale. Fraud has been alleged in connection with the second sale. The use of the mails to complete payments due as to each sale is pleaded. It is alleged that the purchase price of the second sale was to be paid in part by remittances by plaintiff to defendants' creditors, and that 120 checks aggregating $90,000 were mailed by plaintiff in performance of the purchase agreement.

The trial court in its opinion and the defendants in their brief appear to be of the opinion that section 12(2) contemplates the use of the mails by the seller rather than the buyer, and that the payments made to third persons—creditors of the sellers—do not meet the statutory requirement. The payments made to the sellers' creditors were made pursuant to the terms of the sale agreement. In the amendment to the complaint the plaintiff states:

" * * * Also as part of the consideration for the assignment, Plain-

tiff was required to send more than one hundred twenty payments by means of the U. S. Mails. These payments were received and applied as consideration for the assignment * * *."

It seems clear that the payments made to defendants' creditors constituted part of the consideration for the sale of the securities. Such payments were made pursuant to the directions of the defendants contained in the sale agreement. The payments so made discharged the defendants' obligations to their creditors. In Pereira v. United States, 347 U.S. 1, 8–9, 74 S.Ct. 358, 363, 98 L.Ed. 435, the Court, in sustaining a mail fraud conviction, states:

"* * * Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used. * * *"

In our present case it may fairly be said that the defendants could reasonably have foreseen that the mails would be used to carry out their directions that their creditors be paid out of the consideration. The payment of the consideration was an essential element in the consummation of the sale here involved.

To summarize, we believe that Congress intended to make use of its full constitutional powers in making the remedy prescribed by section 12(2) available to victims of fraudulent sales; that the mails and interstate commerce provision was inserted only for jurisdictional purposes; that the application of the rules of grammar to the construction of the statute results in an interpretation of the statute to the effect that the remedy is available if the mails or interstate commerce is used in any manner in consummating the sale; that it is not necessary that the mails or interstate commerce be used in transmitting the false representations; that the payment of the consideration is part of the consummation of the sale; that under the pleaded cause of action jurisdiction exists in the federal court. Such construction is supported by the necessity of construing the Act liberally to carry out its expressed legislative policy.

It appears from the pleadings that the pleaded sales, at least in part, involved the sale of securities. The court therefore acquired jurisdiction of this action pursuant to section 12(2). Whether all items involved in these sales constitute securities and whether plaintiff has proved the essential allegations of its complaint as to each sale can best be determined after trial upon the merits. The court erred in dismissing the complaint for want of jurisdiction.

Reversed and remanded.