E. Elwood LEWIS and James McDonald, Plaintiffs,

v.

WALSTON & CO., INC., and Jackie DeCasenave, Defendants.

Civ. No. 69-1525.

United States District Court, S. D. Florida.

Sept. 18, 1972.

---

2. See note 1, *supra*, with respect to Form 201.

Kelly, Black, Black & Kenny, Miami, Fla., for plaintiffs.

Linwood Anderson, Miami, Fla., for defendants.

## ORDER

JAMES LAWRENCE KING, District Judge.

This cause was submitted to the jury on the complaint of the plaintiffs that defendants had violated Sections 12(1) and 12(2) of the Securities Act of 1933 (15 U.S.C.A. 77*l*(1) and (2) and Chapter 517 of the Florida Statutes. The Court had previously directed verdicts in favor of the defendants on the counts of the complaint involving alleged misrepresentations, untrue statements, and failure to state material facts or fraudulent, deceptive or manipulative acts or practices, which plaintiffs alleged constituted a violation of Sections 10(b) and 15(c) of the Securities Exchange Act of 1934, and Regulations 10(b)5 and 15(c)1–2 promulgated by the Securities Exchange Commission. After the jury returned verdicts against both defendants for the full amounts claimed, defendants filed motions for judgment notwithstanding verdict or for a new trial, and those motions are the subject of this order.

Plaintiffs were the purchasers of admittedly unregistered securities from James and Lucas who purportedly owned certain shares of stock in a company known as Allied Automation and who were otherwise involved in its management. This company had developed and was in the process of manufacturing a money changing and totalizing machine. Neither James nor Lucas are parties to this litigation, although their testimony by. deposition was introduced. Plaintiffs contended that the defendants Walston & Co., Inc., a stock brokerage house, and its Registered Representative Jacqueline (Jackie) DeCasenave were the "proximate cause of the purchase so as to affix liability upon each of them as a " . . . person who offers or sells a security" under Section 12 and under the Florida Act.

Lewis and McDonald were introduced to James by the defendant DeCasenave in December 1968. Shortly thereafter there were discussions and negotiations which led to the first purchase of the stock in question on January 3, 1969. The introduction and certain of the negotiations took place in the presence of defendant DeCasenave at her desk in Walston's office. Likewise James' partner Lucas was introduced to the plaintiffs at a meeting arranged by De-Casenave for the purpose of negotiating or consummating the sale. Although the testimony is bitterly contested, plaintiffs insist that DeCasenave negotiated the price, showed them literature on the company, advised them (incorrectly) that Walston was taking a "position" in the stock of Allied Automation and gave the plaintiffs advice on the adequacy of the "investment letters" which they executed. She further invited them to a "shareholders' meeting" of Allied Automation where they received promotional material and heard James and Lucas speak favorably of the prospects of the company in which they had invested. According to plaintiffs, DeCasenave's enthusiasm and recommendations were the primary reason for their several purchases.

Lewis purchased $10,000 worth of securities on January 3, 1969; $5000 more on March 17, 1969 and $35,000 more on April 28, 1969. McDonald and his relatives purchased $15,000 worth of Allied Automation securities on or about January 3, 1969 and he purchased an additional $5000 worth on June 19, 1969.

■ The purpose of the Securities Act of 1933 was to protect the investing public by requiring the registration with the Securities Exchange Commission of securities publicly offered or sold in interstate commerce. Thus Section 5 of the Act makes it unlawful to sell a security through the instrumentalities of interstate commerce unless the necessary registration statement is in effect. Violation of Section 5 subjects the vendor to virtually absolute liability to his vendee for rescission and return of any consideration paid. In order to make a prima facie case the plaintiff purchaser need only establish (1) that defendant was a seller; (2) that some means of communication or transportation in interstate commerce was used; (3) that a registration statement was not in effect for the security sold. The latter two requirements were clearly present and the entire dispute in the instant case is whether or not defendants may be considered "sellers".

Neither Walston nor DeCasenave were brokers in this transaction so as to expose them to liability under the holdings of Cady v. Murphy, 113 F.2d 988 (1st Cir. 1940); Wall v. Wagner, 125 F.Supp. 854, 858 (D.Neb.1954), affirmed sub nom. Whittaker v. Wall, 226 F.2d 868 (8th Cir. 1955). Nor do plaintiffs seriously contend that the defendants were brokers. The thrust of their argument is that both Walston and De-Casenave were the "proximate cause" of the sale in such a fashion as to affix liability to them under the holding in Lennerth v. Mendenhall, 234 F.Supp. 59 (N.D.Ohio 1964), and Hill York Corp. v. American International Franchises, 448 F.2d 680 (5th Cir. 1971).

■ While defendants introduced substantial evidence that the proximate cause of the sale and purchase was not the action of DeCasenave, the jury chose to believe otherwise and after reviewing the evidence and testimony and considering the memoranda and argument of counsel, it appears that this was properly a jury question as to DeCasenave's liability which has been resolved.

■ As to the liability of Walston & Co. however, weighing the evidence and all reasonable inferences to be drawn therefrom most favorably to the plaintiffs, there is no substantial evidence that this defendant was the proximate cause of the transaction in question. To begin with, while the introductions and many of the meetings of the purchasers and sellers took place in Walston's office, this was a semi-public room where prospective and current investors could observe the stock market's pulsations or

gyrations. Walston was in no way involved in the Allied Automation transactions and both purchasers were well aware of this. They both dealt directly with the sellers James and Lucas and made their payments to this partnership. On one occasion McDonald attempted to deliver his check payable to the James-Lucas partnership to DeCasenave, but she refused to accept it and advised him to make payment to the partnership's bank account, which he did. While plaintiffs testified that they believed DeCasenave would receive some benefit, it was clear that Walston would not, for Walston received no commission on this private transaction and the plaintiffs, experienced traders, knew this. Both plaintiffs testified that they were told by DeCasenave that she would receive an underwriting commission if she could persuade Walston & Co. to take a position in the company. Additionally McDonald was told by DeCasenave that she would receive a $25,000-a-year job with Allied Automation. It is at least significant that these emoluments were not contingent upon plaintiffs' purchases, and certainly both purchasers knew that Walston secured no direct or indirect benefit from the transactions. It was certainly not to Walston's benefit for its customers to invest in unregistered securities which did not return a commission. Further negativing Walston's being the "proximate cause" and establishing plaintiffs' recognition of this was an incident which occurred prior to the first purchase. James Gaff, Walston's officer in charge of the Fort Lauderdale office, warned Lewis against this type of private investment because "there were too many listed stocks to waste your time on pie in the sky deals". Further, both Gaff and DeCasenave confirmed that following this conversation Gaff instructed DeCasenave that she was to have nothing to do with Lewis and McDonald's investment in Allied Automation.

In summary, there is no evidence that plaintiffs relied on Walston & Co. in connection with their purchases. The evidence does, to the contrary, make it clear that plaintiffs knew that Walston had no connection with the sale and received no benefit, and in relying on DeCasenave, they did so with the knowledge that her actions were in no way connected with her position as a Registered Representative at Walston & Co. There is no credible evidence whatsoever that she was acting for Walston when she made the representations which constituted the probable cause and any representations or inducements were therefore clearly outside the course and scope of her employment.

It is accordingly ordered that the verdict and judgment entered herein on the 21st day of April, 1972 in favor of the plaintiffs and against the defendant Walston & Co., Inc. be set aside and that judgment be entered herein for the defendant Walston & Co., Inc., and it is further

Ordered that the alternative motion of the defendants for a new trial be, and the same is hereby denied, and it is further

Ordered that the motion of the defendant Jacqueline DeCasenave for judgment notwithstanding the verdict be, and the same is hereby denied.